# 25-10773

## IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

FAULK COMPANY, INC.,

Plaintiff-Appellee

v.

ROBERT F. KENNEDY, JR., in his official capacity as Secretary of Health and Human Services, U.S. DEPARTMENT OF HEALTH AND HUMAN SERVICES and its subcomponent CENTERS FOR MEDICARE & MEDICAID SERVICES, MEHMET OZ, in his official capacity as Administrator of the Centers for Medicare & Medicaid Services, and UNITED STATES OF AMERICA,

Defendants-Appellants

## ON APPEAL FROM THE JUDGMENT OF THE UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF TEXAS

## BRIEF FOR THE APPELLANTS

BRETT A. SHUMATE
  *Assistant Attorney General*
JOSHUA WU
  *Deputy Assistant Attorney General*

ELLEN PAGE DELSOLE          (202) 514-8128
GEOFFREY J. KLIMAS          (202) 307-6346
  *Attorneys, Tax Litigation Branch*
  *Civil Division, U.S. Department of Justice*
  *Post Office Box 502, Washington, D.C. 20044*

## STATEMENT REGARDING ORAL ARGUMENT

At issue in this appeal are the procedures that the Government must follow before an employer shared responsibility payment is imposed in connection with the Patient Protection and Affordable Care Act's employer mandate. This case presents an issue of first impression that will serve as controlling authority in one pending case, *HHS Envtl. Servs. v. United States, et al.*, No. 1:25-cv-00768 (W.D. Tex.), and persuasive authority in another, *Supreme Linen Servs., Inc. v. United States*, No. 1:25-cv-20723 (S.D. Fla.). Due to the administrative importance of this issue, counsel for the Government respectfully inform the Court that oral argument would be helpful.

# TABLE OF CONTENTS

**Page**

Statement regarding oral argument.........................................i
Table of contents................................................................ii
Table of authorities ........................................................... v
Glossary ..........................................................................xii
Statement of jurisdiction................................................... 1
Statement of the issues ..................................................... 3
Statement of the case ....................................................... 3

    A.    The nature of the case and course of proceedings in the District Court ................................................................ 3

    B.    The relevant facts.................................................... 5

        1.    Employer shared responsibility payments under I.R.C. §4980H ................................................ 5

            a.    Introduction: the Affordable Care Act's employer mandate ................................. 5

            b.    HHS makes an advance determination concerning individuals' eligibility for the premium tax credit ................................ 7

            c.    Individuals claim the premium tax credit on their income tax returns and demonstrate their entitlement thereto..................................... 9

            d.    The IRS assesses ESRPs against applicable large employers after certifying that the prerequisites to liability are satisfied................11

        2.    The IRS determines that Faulk is liable for an employer shared responsibility payment for 2019 ......15

    C.    Proceedings in the District Court.........................16

**Page**

Summary of argument ............................................................21

Argument:

    The District Court's judgment was erroneous and should be
reversed .......................................................................23

        Standard of review .............................................23

I.    The District Court erred in holding that Faulk was
entitled to a refund of the employer shared
responsibility payment assessed against it for 2019............24

A.    The IRS properly assessed an ESRP against Faulk after
it certified that the prerequisites to liability were
satisfied, as required by I.R.C. §4980H ................................24

B.    The District Court erred in holding that the I.R.C.
§4980H certification was invalid because it was made by
the IRS, rather than HHS ......................................................25

    1.    The IRS is the agency best suited to make an
I.R.C. §4980H certification, and nothing in the
statutory text requires that the certification be
made by HHS ..............................................................26

    2.    I.R.C. §4980H(a)'s cross-reference to ACA §1411
does not create a requirement that the certification
be made by HHS .........................................................37

        a.    The meaning of "'under section 1411' of the
ACA" must be determined based on the
context in which it appears .................................38

        b.    The best interpretation of "'under section
1411' of the ACA" is "'in accordance with
section 1411' of the ACA" ....................................39

c.    The District Court's interpretation of "'under section 1411' of the ACA" as "'by reason of the authority of' section 1411 of the ACA" is fatally flawed ....................................................... 42

3.    The fact that certification must occur before the imposition of liability does not create a requirement that HHS make the certification ........... 54

4.    The District Court's policy concerns do not justify rewriting I.R.C. §4980H ............................... 56

II.    The District Court erred in declaring the HHS regulation invalid and setting it aside ................................. 59

A.    The HHS regulation reflects a correct interpretation of the relevant statutes ............................................. 60

B.    At all events, the tax exception to the Declaratory Judgment Act barred the declaratory relief awarded .......... 60

Conclusion .................................................................................... 69
Certificate of compliance ........................................................... 70
Addendum .................................................................................... 71

# TABLE OF AUTHORITIES

**Cases:** **Page(s)**

*Alexander v. Ams. United Inc.*,
416 U.S. 752 (1974) .............................................. 62

*Armstrong Paint & Varnish Works v. Nu-Enamel Corp.*,
305 U.S. 315 (1938) .............................................. 27

*Bartenwerfer v. Buckley*,
598 U.S. 69 (2023) ..............................................27-28

*Bates v. United States*,
522 U.S. 23 (1997) .............................................. 27

*CIC Servs., LLC v. Internal Revenue Serv.*,
593 U.S. 209 (2021) ...........................................64-68

*Cohen v. United States*,
650 F.3d 717 (D.C. Cir. 2011) (en banc) .............. 62

*Commissioner v. Soliman*,
506 U.S. 168 (1993) .............................................. 38

*Cont'l Airlines, Inc. v. Int'l Bhd. of Teamsters*,
391 F.3d 613 (5th Cir. 2004) ................................ 23

*Corley v. United States*,
556 U.S. 303 (2009) .............................................. 34

*Davis v. Monroe Cty. Bd. of Educ.*,
526 U.S. 629 (1999) .............................................. 39

*E.E.O.C. v. Louisville & Nashville R.R. Co.*,
505 F.2d 610 (5th Cir. 1974) ................................ 35

*Faulk Co., Inc. v. Becerra*,
2025 WL 1953854 (N.D. Tex. July 16, 2025) ........ 21

*Franklin v. United States*,
49 F.4th 429 (5th Cir. 2022) ................................ 67

*Gilbert v. United States*,
998 F.3d 410 (9th Cir. 2021) ................................ 64

*Halbig v. Sebelius*,
27 F. Supp. 3d 1 (D.D.C.), *rev'd on other grounds
sub nom.*, *Halbig v. Burwell*, 758 F.3d 390
(D.C. Cir. 2014)...................................................... 6

*Hamdan v. Rumsfeld*,
548 U.S. 557 (2006) .............................................. 33

**Cases (cont'd):** Page(s)

*Hancock Cty. Land Acquisitions, LLC v. United States*,
  2022 WL 3449525 (11th Cir. 2022) (per curiam),
  *cert. denied*, 143 S. Ct. 577 (2023) ......................................... 67

*Hotze v. Burwell*,
  784 F.3d 984 (5th Cir. 2015) ...................................................... 5

*Kirtsaeng v. John Wiley & Sons, Inc.*,
  568 U.S. 519 (2013) ................................................................. 38

*Knight v. Commissioner*,
  552 U.S. 181 (2008) ................................................................. 26

*Kucana v. Holder*,
  558 U.S. 233 (2010) ................................................................. 38

*Landry's, Inc. v. Insur. Co. of the State of Pa.*,
  4 F.4th 366 (5th Cir. 2021) ...................................................... 45

*Lewis v. Commissioner*,
  128 T.C. 48 (2007) ................................................................... 14

*Liberty Univ., Inc. v. Lew*,
  733 F.3d 72 (4th Cir. 2013) ....................................................... 6

*Loper Bright Enters. v. Raimondo*,
  603 U.S. 369 (2024) ............................................................ 35-36

*Mala Geoscience AB v. Witten Techs., Inc.*,
  2007 WL 1576318 (D.D.C. May 30, 2007) ............................... 39

*Mohamad v. Palestinian Auth.*,
  566 U.S. 449 (2012) ................................................................. 45

*Nat'l Ass'n of Mfrs. v. Dep't of Def.*,
  583 U.S. 109 (2018) ................................................................. 39

*Nat'l Fed'n of Indep. Bus. v. Sebelius*,
  567 U.S. 519 (2012) ................................................................... 5

*Optimal Wireless LLC v. Internal Revenue Serv.*,
  77 F.4th 1069 (D.C. Cir. 2023) ....................... 5, 11-12, 64, 67

*Pac. Gas & Elec. Co. v. F.E.R.C.*,
  113 F.4th 943 (D.C. Cir. 2024) ............................................... 58

*Polselli v. Internal Revenue Serv.*,
  598 U.S. 432 (2023) ............................................... 33, 42, 57

*Rivero v. Fid. Invests., Inc.*,
  1 F.4th 340 (5th Cir. 2021) ............................... 61-63, 65

**Cases (cont'd):**                                      **Page(s)**

*Robinson v. Shell Oil Co.,*
    519 U.S. 337 (1997) ..............................................26

*Skidmore v. Swift & Co.,*
    323 U.S. 134 (1944) ..............................................35

*Snow v. First Am. Title Ins. Co.,*
    332 F.3d 356 (5th Cir. 2003)................................28

*Swift v. Commissioner,*
    144 F.4th 756 (5th Cir. 2025) .............................55

*In re Ten Eyck Co., Inc.,*
    40 F. Supp. 270 (N.D.N.Y. 1941), *aff'd,*
    126 F.2d 806 (2d Cir. 1942) .................................39

*United States v. Clintwood Elkhorn Mining Co.,*
    553 U.S. 1 (2008) ..................................................61

*Unwired Planet, Inc. v. Microsoft Corp.,*
    193 F. Supp. 3d 336 (D. Del. 2016)......................39

**Statutes:**

5 U.S.C.:

    § 551 ........................................................................2

Internal Revenue Code (26 U.S.C.):

    § 36B ......................................7, 9, 13, 29, 34
    § 36B(b)(1)(B) ..........................................12
    § 36B(c)(2)(C)(ii) .......................................8
    § 36B(f).................................................10, 34
    § 36B(f)(2) ...............................................10
    § 139K(b)..................................................41
    § 4980H...............3, 5-6, 14, 16-22, 24-35, 37-38,
                       40, 43-56, 59-60
    § 4980H(a) ...........1, 5, 11, 26, 30-31, 37, 41, 47-48, 54
    § 4980H(a)(1) ............................21, 48, 54

**Statutes (cont'd):**                                    **Page(s)**

Internal Revenue Code (26 U.S.C.) (cont'd):

§ 4980H(a)(2) ................................ 11-12, 18, 24-26, 33-34, 37,
                                                    40, 44, 46-48, 54, 56
§ 4980H(b) ...................................................................11-12
§ 4980H(b)(1)(A) ................................................................ 48
§ 4980H(b)(1)(B) ............................... 11-12, 24-26, 33-34,
                                                    37, 40, 44, 46-48, 54, 56
§ 4980H(b)(2) ..................................................................... 12
§ 4980H(c)(2) ...........................................................5, 41, 47
§ 4980H(c)(2)(D)(i)(I) ....................................................... 11
§ 4980H(c)(2)(D)(i)(II) ..................................................... 12
§ 4980H(c)(5) ................................................................11-12
§ 4980H(d)(1) ...........................................................14, 44
§ 6055.................................................................................13, 29
§ 6056.................................................................................13, 29
§ 6103.................................................................................30, 32
§ 6103(a) ..........................................................................30-31
§ 6103(b)(1) .......................................................................... 30
§ 6103(b)(2)(A) .................................................................... 31
§ 6103(c)-(o) ......................................................................... 31
§ 6103(*l*)(21) ......................................................................... 31
§ 6212(b) ............................................................................... 57
§ 6213(a) ............................................................................... 57
§ 6511...................................................................................... 2
§ 6672(b)(1) .......................................................................... 57
§ 6751(b)(1) .......................................................................... 17
§ 6851...................................................................................... 57
§ 6852...................................................................................... 57
§ 7421(a) ..........................................................................61-62
§ 7422........................................................................................ 2
§ 7443(f) ............................................................................... 41
§ 7801...................................................................................... 28
§ 7801(a)(1) .....................................................................28, 52
§ 7803(e).............................................................................. 14

**Statutes (cont'd):** **Page(s)**

28 U.S.C.:

§ 1291 ...................................................................... 3
§ 1331 ...................................................................... 2
§ 1346(a)(1) ............................................................ 2
§ 2107(b) ................................................................ 3
§ 2201 ...................................................................... 2
§ 2201(a) ........................................................... 2, 61-62

31 U.S.C.:

§ 5314 .................................................................... 36

Patient Protection and Affordable Care Act, P.L. 111-148,
    124 Stat. 119 (Mar. 23, 2010) (42 U.S.C.):

§ 18031(b) ......................................................... 7, 53
§ 18041(c) .............................................................. 7
§ 18071 .................................................................. 8
§ 18081 .................................................................. 6
§ 18081(a) ............................................................ 40
§ 18081(a)(1) ..................................................... 8, 40
§ 18081(a)(2) ......................................................... 8
§ 18081(a)(4) ....................................................... 45
§ 18081(b) .............................................................. 8
§ 18081(b)(5) ....................................................... 45
§ 18081(c)(3) ..................................................... 8, 32
§ 18081(d) ............................................................ 32
§ 18081(e) .......................................................... 8, 43
§ 18081(e)(2)(B) .................................................. 45
§ 18081(e)(4)(B)(iii) .................................. 9, 44, 47, 48, 53
§ 18081(e)(4)(B)(iv) ........................................... 45-46
§ 18081(f)(2)(A) ............................................... 9, 58
§ 18081(f)(2)(B) .................................................. 31
§ 18082(a)(1) ......................................................... 8

**Statutes (cont'd):**                                   **Page(s)**

Patient Protection and Affordable Care Act (42 U.S.C.) (cont'd):

§ 18082(a)(3) ............................................................. 8
§ 18082(b)(1) ............................................................. 8

**Regulations:**

Treasury Regulations (26 C.F.R.):

§ 1.36B-1 .................................................................. 9
§ 1.36B-4 ................................................................ 10
§ 1.36B-4(a)(1) .......................................................... 10
§ 1.6055-1 .......................................................... 13, 29
§ 54.4980H-5 .........................................................11-12
§ 301.6056-1 ........................................................ 13, 29
§ 601.106 ................................................................ 14

31 C.F.R.:

§ 1010.350 .............................................................. 36
§ 1010.420 .............................................................. 36
§ 1010.810(g) ........................................................... 36

45 C.F.R.:

§ 155.310 ............................................................... 49
§ 155.310(h) ............................................................ 49
§ 155.310(i) ............................. 2-4, 16, 20, 35-36, 49, 60, 63, 66

**Miscellaneous:**                                                        **Page(s)**

77 Fed. Reg. 18310-01 (Mar. 27, 2012) .............................. 47, 49

78 Fed. Reg. 4594-01 (Jan. 22, 2013) ........................... 10, 47, 50

Antonin Scalia & Bryan A. Garner, *Reading Law: The Interpretation of Legal Texts* (2012) ..................................... 45

*Black's Law Dictionary* (12th ed. 2024) ...................... 38-39, 43

*Dictionary of Modern Legal Usage* (2d ed. 1995) ................... 39

Fed. R. App. P. 4(a)(1)(B) ............................................... 3

Felix Frankfurter, *Some Reflections on the Reading of Statutes*, 47 Colum. L. Rev. 527 (1947) ............................... 27

https://irs.gov/pub/irs-pdf/f1094c.pdf (last visited Nov. 24, 2025) ........................................................... 13, 29

https://irs.gov/pub/irs-pdf/f1095c.pdf (last visited Nov. 24, 2025) ........................................................... 13, 29

https://www.cms.gov/marketplace/in-person-assisters/training-webinars/training/marketplaces-map (last visited Nov. 24, 2025) ................................... 7

https://www.dictionary.com .................................... 38-39, 43-44

https://www.irs.gov/individuals/understanding-your-letter-226-j (last visited Nov. 24, 2025) ........................... 13

https://www.irs.gov/pub/irs-pdf/f8962.pdf (last visited Nov. 24, 2025) .................................... 10, 13, 29

https://www.irs.gov/pub/irs-pdf/p5.pdf (last visited Nov. 24, 2025) ....................................................... 14

Raymond M. Kethledge, *Ambiguities and Agency Cases: Reflections After (Almost) Ten Years on the Bench*, 70 Vand. L. Rev. En Banc 315 (2017) ............................... 53

# GLOSSARY

| Abbreviation | Definition |
|---|---|
| ACA | portions of the Affordable Care Act codified in Title 42 |
| Affordable Care Act | Patient Protection and Affordable Care Act, P.L. 111-148, 124 Stat. 119 (Mar. 23, 2010) |
| AIA | Anti-Injunction Act, I.R.C. §7421(a) |
| APTC | advance payment of the premium tax credit |
| CMS | Centers for Medicare & Medicaid Services |
| DJA | tax exception to the Declaratory Judgment Act, 28 U.S.C. §2201(a) |
| ESRP | employer shared responsibility payment |
| Faulk | Faulk Company, Inc. |
| the Government | United States of America, HHS and its subcomponent CMS, the Secretary of HHS, and the Administrator of CMS |
| HHS | U.S. Department of Health and Human Services |
| I.R.C. | Internal Revenue Code (26 U.S.C.) |
| IRS | Internal Revenue Service |
| Treas. Reg. | Treasury Regulation (26 C.F.R.) |

## STATEMENT OF JURISDICTION

On December 1, 2021, the Internal Revenue Service issued Faulk Company, Inc. ("Faulk") a Letter 226-J, which contained the IRS's preliminary determination that Faulk owed an employer shared responsibility payment ("ESRP") for the 2019 year pursuant to Internal Revenue Code ("I.R.C.") (26 U.S.C.) §4980H(a). (ROA.12, 109-114.) Later that month, Faulk paid the proposed ESRP in full. (ROA.10.) In January 2022, Faulk filed an administrative claim requesting a refund. (ROA.10, 425-437.) Following further administrative proceedings, the IRS formally assessed the ESRP liability against Faulk, and Faulk renewed its request for a refund. (ROA.21, 461-472.)

In June 2024, after more than six months had elapsed without a final determination on its refund claim, Faulk filed this suit asserting four claims against the United States, the U.S. Department of Health and Human Services ("HHS") and its subcomponent the Centers for Medicare & Medicaid Services ("CMS"), the Secretary of HHS, and the Administrator of CMS (collectively, "the Government"). (ROA.8-22.) The first two claims sought a refund of the ESRP assessed against Faulk; the third and fourth claims sought a declaratory judgment that

45 C.F.R. §155.310(i), which supported the procedure used by the IRS to assess the ESRP, was invalid and should be set aside. (ROA.17-21.)

With respect to Faulk's refund claims, the District Court had subject matter jurisdiction pursuant to 28 U.S.C. §1346(a)(1) and I.R.C. §§6511 and 7422. With respect to Faulk's claims seeking declaratory relief, Faulk invoked the following potential sources of jurisdiction: 28 U.S.C. §1331, the Administrative Procedure Act, 5 U.S.C. §551, *et seq.*, the Declaratory Judgment Act, 28 U.S.C. §2201, *et seq.*, and the court's "inherent equitable powers." (ROA.10-11.) However, the tax exception to the Declaratory Judgment Act, 28 U.S.C. §2201(a), deprived the court of jurisdiction over the claims seeking declaratory relief. *Infra*, pp. 60-68.

On April 25, 2025, an amended judgment was entered in favor of Faulk and against the Government pursuant to an opinion and order granting Faulk's motion for summary judgment and denying the Government's cross-motion. (ROA.628-644, 650.) The amended judgment disposed of all claims of all parties.

On June 20, 2025, the Government filed a timely notice of appeal. (ROA.726-728); 28 U.S.C. §2107(b); Fed. R. App. P. 4(a)(1)(B). This Court has jurisdiction pursuant to 28 U.S.C. §1291.

## STATEMENT OF THE ISSUES

1. Whether the District Court erred in holding that Faulk was entitled to a refund of its 2019 ESRP liability because the IRS, rather, than HHS, made the certification contemplated by I.R.C. §4980H.

2. Whether the District Court erred in setting aside 45 C.F.R. §155.310(i), which supports the Government's position that the IRS has the authority to make the certification contemplated by I.R.C. §4980H.

## STATEMENT OF THE CASE

### A. The nature of the case and course of proceedings in the District Court

The IRS determined that (i) Faulk was an applicable large employer that had not offered qualifying health insurance coverage (*i.e.*, coverage that provides minimum value and is affordable) to its full-time employees and (ii) at least one of those employees was allowed a premium tax credit after purchasing his own coverage through a Health Benefit Exchange. After the IRS certified that the prerequisites to liability were satisfied, it assessed an employer shared responsibility

payment against Faulk for 2019. Faulk then filed this suit, seeking two forms of relief. First, Faulk sought a refund of the approximately $200,000 ESRP that it had paid. Second, Faulk sought a declaratory judgment that a regulation supporting the IRS's authority to make the required certification was invalid.

The Government moved to dismiss Faulk's complaint for lack of subject matter jurisdiction and failure to state a claim upon which relief could be granted. After the motion was fully briefed, the District Court (Judge Mark T. Pittman) notified the parties that it intended to treat the parties' briefing as cross-motions for summary judgment. The court then issued an opinion and order, reported at 777 F. Supp. 3d 714, granting Faulk's motion for summary judgment and denying the Government's cross-motion. In doing so, the court held that the certification which serves as a prerequisite to the imposition of ESRP liability can be made only by HHS and that the IRS's certification was, therefore, invalid. The court further held that 45 C.F.R. §155.310(i), which states that the IRS is responsible for making the certification, would be set aside.

## B. The relevant facts

### 1. Employer shared responsibility payments under I.R.C. §4980H

#### a. Introduction:  the Affordable Care Act's employer mandate

In 2010, Congress enacted the Patient Protection and Affordable Care Act ("Affordable Care Act"), P.L. 111-148, 124 Stat. 119 (Mar. 23, 2010), "to increase the number of Americans covered by health insurance and decrease the cost of health care."  *Nat'l Fed'n of Indep. Bus. v. Sebelius*, 567 U.S. 519, 538 (2012); *accord Hotze v. Burwell*, 784 F.3d 984, 986-87 (5th Cir. 2015).  Most of the Affordable Care Act's provisions are codified in Title 42 and Title 26.  For clarity, we refer to the Title 42 provisions as "ACA" and the Title 26 provisions as "I.R.C."  As relevant here, the Affordable Care Act requires applicable large employers (*i.e.*, generally those with at least 50 full-time employees, including full-time equivalent employees) to either offer qualifying health insurance coverage or potentially be subject to an excise tax under I.R.C. §4980H(a) or (b).  I.R.C. §4980H(a), (b), (c)(2); *Optimal Wireless LLC v. Internal Revenue Serv.*, 77 F.4th 1069, 1071 (D.C. Cir. 2023).

The requirement that applicable large employers offer health insurance coverage is commonly known as the "employer mandate," and the excise tax backing up the employer mandate is commonly known as the "employer shared responsibility payment" or "ESRP."[1] I.R.C. §4980H. As illustrated below, ESRPs are designed to offset, to some extent, costs passed onto the public when employers do not offer qualifying insurance. *Halbig v. Sebelius*, 27 F. Supp. 3d 1, 15 (D.D.C.), *rev'd on other grounds sub nom.*, *Halbig v. Burwell*, 758 F.3d 390 (D.C. Cir. 2014); *Liberty Univ., Inc. v. Lew*, 733 F.3d 72, 98 (4th Cir. 2013) ("the employer mandate exaction is proportionate rather than punitive").

As relevant here, the process of imposing ESRP liability involves three stages. First, HHS makes an advance determination concerning individuals' eligibility for a premium tax credit when they purchase health insurance coverage through a Health Benefit Exchange and apply for financial assistance. Second, individuals claim the premium tax credit on their income tax returns. Third, the IRS assesses ESRPs

---

[1] The District Court incorrectly identified the source of the employer mandate as ACA §1411, which is codified at 42 U.S.C. §18081. (ROA.630.) In fact, the mandate is contained in I.R.C. §4980H.

against applicable large employers after certifying that the

prerequisites to liability are satisfied.  We address each stage in turn.

### b. HHS makes an advance determination concerning individuals' eligibility for the premium tax credit

The Affordable Care Act provides that each State shall establish a

Health Benefit Exchange to assist individuals seeking to purchase

health insurance coverage through the private marketplace.  42 U.S.C.

§18031(b).  The Affordable Care Act further provides that, if a State

does not establish an Exchange, then HHS will establish and operate an

Exchange in that State.  42 U.S.C. §18041(c).  HHS operates the

Exchange in Texas, which is the relevant state here.

https://www.cms.gov/marketplace/in-person-assisters/training-

webinars/training/marketplaces-map (last visited Nov. 24, 2025).

When an individual purchases health insurance coverage through

an Exchange, he has the opportunity to apply for financial assistance in

the form of a premium tax credit, which reduces the amount that he

pays in insurance premiums.[2]  I.R.C. §36B.  As part of its "advance

---

[2] Individuals that purchase certain insurance coverage and receive a premium tax credit may also benefit from cost-sharing reductions,

(continued…)

determination" that an applicant is eligible for a premium tax credit, HHS reviews and verifies information provided by the applicant via the coverage application, including but not limited to information about the individual's citizenship or immigration status, his household income, and the extent to which his employer offers minimum essential coverage (and, if so, whether that coverage is affordable and provides minimum value). 42 U.S.C. §§18081(a)(1) & (a)(2), 18082(a)(1) & (b)(1); *see also* I.R.C. §36B(c)(2)(C)(ii) (defining minimum value). Once HHS has determined that the individual is eligible for a premium tax credit, the Treasury Department makes an "advance payment" of that credit to the individual's chosen health insurance provider. This is commonly referred to as an "advance payment of the premium tax credit" or "APTC." 42 U.S.C. §§18081(b), (c)(3), & (e), 18082(a)(3) & (c).

Following HHS's determination that an individual is eligible for an APTC because his employer failed to offer health coverage or offered unaffordable coverage, the Exchange is required to "notify the

---

which reduce the amount paid for deductibles, copayments, and coinsurance. 42 U.S.C. §18071. For simplicity, this brief focuses on premium tax credits, which apply to a greater number of individuals and coverages.

[individual's] employer … that the employer may be liable for" an ESRP. 42 U.S.C. §18081(e)(4)(B)(iii). The Exchange is also required to notify the employer that it can dispute HHS's determination in an administrative appeal.[3] *Id.* §18081(e)(4)(B)(iii) & (C), (f). The HHS appeal is "in addition to any rights of appeal the employer may have under subtitle F of this title" *i.e.*, the appeal rights available under the Internal Revenue Code. 42 U.S.C. §18081(f)(2)(A); *see infra*, p. 14.

### c. Individuals claim the premium tax credit on their income tax returns and demonstrate their entitlement thereto

Regardless of whether HHS has made an advance determination that an individual is eligible for a premium tax credit, the individual must claim the credit on his income tax return at the end of the year and demonstrate his entitlement thereto. I.R.C. §36B; Treasury Regulation ("Treas. Reg.") (26 C.F.R.) §1.36B-1, *et seq.* The individual does so by filing Form 8962 as an attachment to his return and

---

[3] The District Court seemed to suggest that ACA §1411 requires the Exchange to issue two notices: one notifying the employer that it may be liable for an ESRP and another notifying the employer of its right to an administrative appeal. (ROA.632, 635.) In fact, nothing in the statute prevents the Exchange from issuing a single notice notifying the employer of both its potential liability and the availability of an appeal. *See* 42 U.S.C. §18081(e)(4)(B)(iii) & (C).

reporting (among other things) his income, his joint filer's income, his dependents' income, his household's income, and the premiums charged by his chosen health insurance provider. *See* https://www.irs.gov/pub/irs-pdf/f8962.pdf (last visited Nov. 24, 2025).

If the individual applied for financial assistance when purchasing health insurance coverage and his insurance provider received advance payment of the premium tax credit, then his Form 8962 must also reconcile that APTC against the amount of the credit to which he is actually entitled. I.R.C. §36B(f); Treas. Reg. §1.36B-4; https://www.irs.gov/pub/irs-pdf/f8962.pdf. Subject to certain limitations, the individual is required to repay (in the form of a tax) any amount of the APTC that exceeds the credit to which he is entitled. I.R.C. §36B(f)(2); Treas. Reg. §1.36B-4(a)(1), (3); https://www.irs.gov/pub/irs-pdf/f8962.pdf.

If the individual did not apply for financial assistance when purchasing health insurance coverage, then there is no prior HHS eligibility determination and no APTC to be reconciled. 78 Fed. Reg. 4594-01, at *4636 (Jan. 22, 2013). In that situation, the IRS must determine, in the first instance, the individual's entitlement to the

premium tax credit, *i.e.*, the amount of the credit that "is allowed or paid with respect to the employee." I.R.C. §4980H(a)(2); *see also id.* §4980H(b)(1)(B).

### d. The IRS assesses ESRPs against applicable large employers after certifying that the prerequisites to liability are satisfied

The requirement that applicable large employers offer health insurance is backed up by ESRPs. If an applicable large employer fails to offer minimum essential coverage to its full-time employees (and their dependents), then the employer may be subject to an ESRP under I.R.C. §4980H(a), calculated as 1/12th of $2,000 for each full-time employee on the employer's payroll per month (or $2,000 per employee per year, subject to the reduction provided in I.R.C. §4980H(c)(2)(D)(i)(I) and adjusted under I.R.C. §4980H(c)(5)). I.R.C. §4980H(a), (c); Treas. Reg. §54.4980H-5; *Optimal Wireless*, 77 F.4th at 1071. If an applicable large employer offers minimum essential coverage, but the coverage is unaffordable or does not provide minimum value, then the employer may be subject to an ESRP under I.R.C. §4980H(b), calculated as 1/12th of $3,000 for each full-time employee on the employer's payroll per month (or $3,000 per employee per year, subject to the limitation

provided in I.R.C. §4980H(b)(2) & (c)(2)(D)(i)(II) and adjusted under I.R.C. §4980H(c)(5)). I.R.C. §4980H(b), (c); Treas. Reg. §54.4980H-5; *Optimal Wireless*, 77 F.4th at 1071-72.

Importantly, ESRP liability is not imposed automatically when an applicable large employer fails to offer minimum essential coverage to its full-time employees (and their dependents), or when it offers minimum essential coverage that is unaffordable or does not provide minimum value. Rather, liability is imposed only upon the occurrence of additional specified conditions. First, at least one of the employer's full-time employees must purchase coverage through an Exchange. I.R.C. §4980H(a)(2), (b)(1)(B). Second, the employee must claim a premium tax credit on his income tax return. I.R.C. §§36B, 4980H(a)(2) & (b)(1)(B). Third, the credit must be "allowed or paid" with respect to the employee. I.R.C. §4980H(a)(2), (b)(1)(B). Finally, it must be "certified to the employer" that these conditions are satisfied. *Id.*

The information necessary to make the required certification is reported to the IRS in the ordinary course. Applicable large employers are required to file Forms 1094-C and 1095-C with the IRS, reporting the number of full-time employees on their payrolls each month;

whether they offered those employees (and their dependents) the opportunity to enroll in minimum essential coverage; the name, address, and taxpayer identification number of each full-time employee on their payrolls each month; and the name, address, and taxpayer identification number of each full-time employee covered under the employers' health plan each month. I.R.C. §§6055, 6056; Treas. Reg. §§1.6055-1, 301.6056-1; https://irs.gov/pub/irs-pdf/f1094c.pdf (last visited Nov. 24, 2025); https://irs.gov/pub/irs-pdf/f1095c.pdf (last visited Nov. 24, 2025). And as we just explained, employees claiming a premium tax credit are required to file Forms 8962 as attachments to their income tax returns, demonstrating their entitlement to the credit and providing information that can be reconciled against the information reported by employers. I.R.C. §36B; https://www.irs.gov/pub/irs-pdf/f8962.pdf.

Once the IRS has made a preliminary determination that all the conditions for ESRP liability are satisfied, it issues a Letter 226-J to the employer. (ROA.109-114); https://www.irs.gov/individuals/ understanding-your-letter-226-j (last visited Nov. 24, 2025). The letter sets forth the IRS's determination that the employer is liable for an

ESRP, the amount of the proposed liability, and the certification contemplated by I.R.C. §4980H. (ROA.109-114.) The letter further invites the employer either to agree with the proposed ESRP and pay it, or to submit information to contradict the IRS's preliminary determination. (ROA.110.) Finally, the letter informs the employer that, if it does not respond, the IRS will formally assess the liability and undertake collection. (ROA.111.)

If the employer's proposed ESRP liability still remains unresolved, it is generally invited to file a written protest and obtain a conference with the IRS Independent Office of Appeals. (ROA.180-181); *see also* I.R.C. §7803(e); Statement of Procedural Rules, 26 C.F.R. §601.106. In such a conference, the employer has the opportunity to present evidence and argument, as well as meet with an Appeals Officer. *Lewis v. Commissioner*, 128 T.C. 48, 59 (2007); https://www.irs.gov/pub/irs-pdf/p5.pdf (last visited Nov. 24, 2025).

At the conclusion of these administrative processes, the ESRP is "assessed and collected in the same manner as an assessable penalty under subchapter B of chapter 68" of the Internal Revenue Code. I.R.C. §4980H(d)(1).

## 2. The IRS determines that Faulk is liable for an employer shared responsibility payment for 2019

Faulk is a janitorial services company with a principal place of business in Fort Worth, Texas. (ROA.9.) At the relevant time, Faulk had approximately 100 employees and was, therefore, an "applicable large employer" subject to the Affordable Care Act's employer mandate. (ROA.12, 112.) After the employer mandate went into effect, Faulk offered its employees the opportunity to purchase health insurance coverage. (ROA.12, 222.) The record does not disclose the nature of the coverage offered by Faulk or the amount that its employees would have been required to pay as premiums. None of Faulk's employees purchased the coverage offered by Faulk. (ROA.12, 222.)

In 2019, Faulk stopped offering its employees the opportunity to purchase health insurance coverage, and multiple employees purchased coverage through an Exchange. (ROA.12, 112, 222.) On December 1, 2021, the IRS issued Faulk a Letter 226-J, which certified that, for each month of 2019, at least one of its full-time employees had enrolled in coverage through an Exchange and been allowed a corresponding premium tax credit. (ROA.12, 109-114.) The letter further set forth the IRS's preliminary determination that Faulk's resulting ESRP liability

for 2019 was $205,621.71. (ROA.109, 112.) On December 28, 2021,

Faulk paid the proposed ESRP in full. (ROA.10, 223.)

Faulk then filed an administrative claim for refund with the IRS.

(ROA.18, 223, 425-437.) Faulk did not challenge the IRS's

determination that it was an applicable large employer subject to the

employer mandate, that it had not offered its employees the opportunity

to purchase health insurance coverage, that at least one of its full-time

employees had been allowed a premium tax credit for each month of

2019, or that the IRS had correctly calculated the amount of the ESRP.

Instead, Faulk argued that the certification required by I.R.C. §4980H

could be made only by HHS; therefore, the IRS's certification was

invalid, and no ESRP could be imposed. (ROA.426-436.) The IRS

rejected Faulk's argument and assessed the ESRP. (ROA.21, 461-472.)

The IRS also proposed ESRP liabilities against Faulk for subsequent

years. (ROA.165, 222.)

### C. Proceedings in the District Court

1. Faulk filed this suit asserting four claims against the

Government: two seeking a refund of the ESRP that Faulk had paid for

2019; and two seeking a declaratory judgment that 45 C.F.R.

§155.310(i), which supported the procedure used by the IRS to assess the ESRP, was invalid and should be set aside. In Count I, Faulk alleged that it had no ESRP liability for 2019 in the absence of an I.R.C. §4980H certification by HHS, rather than the IRS. In Count II, Faulk alleged that the ESRP assessment against it was improper in the absence of written supervisory approval, as required for certain penalties by I.R.C. §6751(b)(1). In Count III, Faulk alleged that the regulation at issue conflicted with the relevant statutory provisions. In Count IV, Faulk alleged that the regulation was arbitrary and capricious. (ROA.8-22.)

The Government moved to dismiss Faulk's complaint. (ROA.78-107.) In its motion, the Government argued that Faulk's refund claims failed as a matter of law. (ROA.95-102, 193-196.) The Government further argued that the court lacked jurisdiction over Faulk's claims seeking declaratory relief and that, at all events, those claims failed as a matter of law. (ROA.102-106, 196-200.) In its response, Faulk conceded that the refund claim asserted in Count II should be dismissed (ROA.154), but otherwise opposed the Government's motion (ROA.147-176).

After the Government's motion was fully briefed, the District Court notified the parties that it intended to treat the parties' briefing as cross-motions for summary judgment.  (ROA.202-203.)  Following supplemental briefing, the court granted Faulk's motion for summary judgment on Counts I and III, denied the Government's cross-motion on those counts, and dismissed the remaining counts.  (ROA.628-644.)

2.     As to the refund claim in Count I, the court grappled with the relevant provisions of the Affordable Care Act, which it found presented significant "interpretative challenges."  (ROA.636-637.)  The court homed in on I.R.C. §4980H's requirement that imposition of an ESRP be preceded by "certifi[cation] to the employer under section 1411 of the Patient Protection and Affordable Care Act" that at least one full-time employee had enrolled "in a qualified health plan with respect to which an applicable premium tax credit or cost-sharing reduction is allowed or paid with respect to the employee."  (ROA.634); I.R.C. §4980H(a)(2).

The court acknowledged that "I.R.C. §4980H is silent as to which agency must provide certification."  Nonetheless, it concluded that I.R.C. §4980H's cross-reference to ACA §1411 meant that certification

must be carried out "by reason of the authority of ACA §1411." And because the authority of ACA §1411 "is exclusively given to HHS," the court further concluded that the IRS's "established practice" of making the certifications itself was improper. Because the IRS followed this practice in assessing an ESRP against Faulk for 2019, the court held that the ESRP was invalid and that Faulk was entitled to a refund. (ROA.633-638.)

The court conceded that its interpretation of the relevant provisions was "not ... without its challenges." In particular, the court noted that ACA §1411 does not use the word "certification" or "certify" in connection with the employer mandate or ESRPs. However, the court opined that, because ACA §1411 directs the Exchange to "notify" employers that it has determined one of their employees is eligible for an advance payment of the premium tax credit, the "notice" contemplated by ACA §1411 was "likely" the same as the "certification" contemplated by I.R.C. §4980H. The court candidly admitted that the "[ACA §1411] 'notice' and [I.R.C. §4980H] 'certification' may not be the same," but ultimately concluded that conflating the two represented

"the best interpretation" that could be drawn from a statutory scheme that was "far from perfectly drafted." (ROA.635-636.)

3. The court next turned to Count III of Faulk's complaint, seeking a declaratory judgment that 45 C.F.R. §155.310(i)—which supported the IRS's practice of making I.R.C. §4980H certifications— was invalid. The court held that the tax exception to the Declaratory Judgment Act did not deprive it of jurisdiction because the target of Faulk's declaratory relief was "the improper certification that stands as a procedural prerequisite to the tax," not the tax itself. The court then held that, because it had already determined that the relevant statutory provisions require HHS to make the certification contemplated by I.R.C. §4980H, the regulation supporting the IRS's contrary practice would be set aside. (ROA.639-642.)

Because it held that the regulation would be set aside as conflicting with the relevant statutes, the court declined to reach Count IV of Faulk's complaint, seeking to set aside the regulation as arbitrary and capricious.[4] (ROA.643.)

---

[4] The court later held that the Government was substantially justified in defending this suit and therefore denied Faulk's motion for

(continued…)

## SUMMARY OF ARGUMENT

1.　　This appeal stems from Faulk's challenge to the procedures

that the IRS used when assessing an approximately $200,000 ESRP

against it in connection with the Affordable Care Act's employer

mandate.  Under the plain terms of I.R.C. §4980H(a)(1), the imposition

of ESRP liability must be preceded by a certification to the employer

that one of its employees enrolled in a qualified health plan with

respect to which a premium tax credit was allowed or paid.  It is

undisputed that the IRS made such a certification to Faulk.  And

because Faulk's sole challenge to the ESRP was that it did not receive a

valid I.R.C. §4980H certification, the ESRP should have been sustained

in full.

The District Court nonetheless disallowed the ESRP.  In doing so,

the court created a new requirement, unmoored from the statutory text,

that HHS—and only HHS—can make the certification contemplated by

I.R.C. §4980H.  The court did so even though I.R.C. §4980H is silent as

to which agency must make the required certification; even though the

_____

attorneys' fees. *Faulk Co., Inc. v. Becerra*, 2025 WL 1953854, at *1-*2
(N.D. Tex. July 16, 2025).

certification requirement is contained in Title 26, which the IRS is charged with administering; and even though the court could identify no statutory provision that authorizes HHS to "certify," or make a "certification," concerning anything connected with the employer mandate or ESRPs.

To justify this result, the court conflated an HHS "notice" requirement, contained in ACA §1411, with the IRS "certification" requirement, contained in I.R.C. §4980H. But ACA §1411 notices and I.R.C. §4980H certifications address different steps in the ESRP process, take into account different facts, are issued to different categories of employers, and have a different temporal sweep. Even Faulk "tend[ed] to agree with the United States that the employer notice requirement of Section 1411 is not, by itself, coterminous with what Congress envisioned" for I.R.C. §4980H certifications. (ROA.171.) Under the circumstances, the court's contrary reading of the relevant statutory provisions cannot stand.

2. The District Court also entered a declaratory judgment that an HHS regulation, which supported the IRS's authority to make I.R.C. §4980H certifications, conflicted with the relevant statutory provisions

and should be set aside.  In fact, the regulation reflects a correct reading of the relevant provisions, as we have just explained.  At all events, the tax exception to the Declaratory Judgment Act deprives courts of jurisdiction to award declaratory relief "with respect to Federal taxes," like the declaratory relief awarded here.

The judgment of the District Court is erroneous and should be reversed.

## ARGUMENT

### The District Court's judgment was erroneous and should be reversed

#### Standard of review

This Court reviews *de novo* the grant and denial of cross-motions for summary judgment.  *Cont'l Airlines, Inc. v. Int'l Bhd. of Teamsters*, 391 F.3d 613, 616 (5th Cir. 2004).

# I.

**The District Court erred in holding that Faulk was entitled to a refund of the employer shared responsibility payment assessed against it for 2019**

### A. The IRS properly assessed an ESRP against Faulk after it certified that the prerequisites to liability were satisfied, as required by I.R.C. §4980H

As discussed at page 12, *supra*, ESRP liability is not imposed automatically when an applicable large employer fails to offer minimum essential coverage to its full-time employees (and their dependents), or when it offers minimum essential coverage that is unaffordable or does not provide minimum value. Rather, liability is imposed only upon the occurrence of additional specified conditions: at least one of the employer's full-time employees must purchase coverage through an Exchange, the employee must claim a premium tax credit on his income tax return, and the credit must be "allowed or paid" with respect to the employee. I.R.C. §4980H(a)(2); *see also id.* §4980H(b)(1)(B). Furthermore, liability is only imposed after it "has been certified" that these conditions are satisfied:

> at least one full-time employee of the applicable large employer has been certified to the employer under section 1411 of the Patient Protection and Affordable Care Act as having enrolled for such month in a qualified health plan with respect to which an applicable premium tax credit or cost-

sharing reduction is allowed or paid with respect to the employee[.]

I.R.C. §4980H(a)(2); *see also id.* §4980H(b)(1)(B).

Here, Faulk does not dispute that it failed to offer minimum essential coverage to its full-time employees for 2019 and, indeed, readily admits that it offered no coverage at all. (ROA.12, 222.) Nor does Faulk dispute that at least one of its full-time employees purchased coverage through an Exchange, that the employee claimed a tax credit on his income tax return, and that the credit was allowed or paid. (ROA.112.) Moreover, Faulk does not dispute that the IRS issued a Letter 226-J certifying that the foregoing conditions were met. (ROA.109-114.) Accordingly, all the prerequisites to ESRP liability were satisfied, and the ESRP assessed against Faulk for 2019 should have been sustained.

## B. The District Court erred in holding that the I.R.C. §4980H certification was invalid because it was made by the IRS, rather than HHS

The District Court nonetheless disallowed the ESRP. In doing so, the court held that the certification contemplated by I.R.C. §4980H could be made only by HHS and, therefore, the IRS's certification was invalid. (ROA.633-638.) However, nothing in the text of I.R.C. §4980H

requires that HHS make the certification, and, in fact, the IRS is the only agency with the both the legal authority and practical ability to do so.  By engrafting a contrary requirement onto I.R.C. §4980H that appears nowhere in the statutory text, the court erred.

**1. The IRS is the agency best suited to make an I.R.C. §4980H certification, and nothing in the statutory text requires that the certification be made by HHS**

a.  This case turns on the proper interpretation of I.R.C. §4980H(a) and (b).  In matters of statutory interpretation, the court begins with the text of the statute.  *Knight v. Commissioner*, 552 U.S. 181, 187 (2008).  If "the language at issue has a plain and unambiguous meaning with regard to the particular dispute in the case," and "the statutory scheme is coherent and consistent," then the court looks no further.  *Robinson v. Shell Oil Co.*, 519 U.S. 337, 340 (1997) (citation and internal quotations omitted).

By its terms, I.R.C. §4980H provides that ESRP liability is imposed only after it "has been certified" that certain prerequisites to liability are satisfied.  I.R.C. §4980H(a)(2) *see also id.* §4980H(b)(1)(B).  As Faulk noted in the proceedings below, the certification requirement is phrased "in the passive voice, so it is silent as to which agency" is

responsible for making the required certification.  (ROA.172.)  The District Court echoed that observation, stating that "I.R.C. § 4980H is silent as to which agency must provide certification."  (ROA.634.)

At first blush, the most natural reading of the provision is that Congress did not require any particular agency to make the certification.  *See Bartenwerfer v. Buckley*, 598 U.S. 69, 76 (2023) (statute's use of the passive voice suggested that "Congress was agnostic" about who took the required action) (citation, alteration, and internal quotations omitted).  Thus, the certification could validly be made by the IRS, HHS, or some other agency altogether.  This is consistent with the Supreme Court's admonition that "we ordinarily resist reading words or elements into a statute that do not appear on its face."  *Bates v. United States*, 522 U.S. 23, 29 (1997); Felix Frankfurter, *Some Reflections on the Reading of Statutes*, 47 Colum. L. Rev. 527, 536 (1947) ("One more caution is relevant when one is admonished to listen attentively to what a statute says.  One must also listen attentively to what it does not say.").

Of course, courts have an obligation to avoid construing statutes in a way that would create a "glaringly absurd" result.  *Armstrong Paint*

& *Varnish Works v. Nu-Enamel Corp.*, 305 U.S. 315, 333 (1938); *accord Snow v. First Am. Title Ins. Co.*, 332 F.3d 356, 360 (5th Cir. 2003). A plausible argument could therefore be advanced that I.R.C. §4980H should not be read to permit certification by an agency wholly unconnected with the administration of the Internal Revenue Code or Affordable Care Act. *See Bartenwerfer*, 598 U.S. at 76 ("context can confine a passive-voice sentence to a likely set of actors"). But it is eminently reasonable—and certainly does not create a glaringly absurd result—for the IRS, which is charged with administering the tax code, to make a certification that serves as the prerequisite to the imposition of a tax. *See* I.R.C. §7801(a)(1). Neither Faulk nor the District Court has suggested otherwise.

b.     Indeed, the IRS is not just the agency best suited to make the certification required by I.R.C. §4980H, but the only agency that has both the legal authority and practical ability to do so. As a threshold matter, I.R.C. §7801 provides that "[e]xcept as otherwise expressly provided by law, the administration and enforcement of [Title 26] shall be performed by or under the supervision of the Secretary of the Treasury." I.R.C. §7801(a)(1). As we have explained,

the I.R.C. §4980H certification requirement is both contained in, and a prerequisite to liability under, Title 26; therefore, it must be performed by or under the supervision of the Treasury Department unless "otherwise expressly provided by law." However, no law provides for HHS, which is located outside the Treasury Department, to make such a certification—much less does so expressly.

Furthermore, the IRS has all the information necessary to make an I.R.C. §4980H certification. Applicable large employers are required to file Forms 1094-C and 1095-C with the IRS, reporting the information necessary to determine whether they offered health insurance coverage, the extent of coverage offered, the number of full-time employees, and the identity of those employees. I.R.C. §§6055, 6056; Treas. Reg. §§1.6055-1, 301.6056-1; https://irs.gov/pub/irs-pdf/f1094c.pdf; https://irs.gov/pub/irs-pdf/f1095c.pdf. And employees claiming a premium tax credit are required to file Form 8962 with the IRS, demonstrating their entitlement to the credit and providing information that can be reconciled against the information reported by the employers. I.R.C. §36B; https://www.irs.gov/pub/irs-pdf/f8962.pdf. Thus, the IRS is well-positioned to certify to an applicable large

employer that at least one of its full-time employees was enrolled in a qualified health plan for which a premium tax credit was allowed or paid. *See* I.R.C. §4980H(a), (b).

c. By contrast, HHS does not have the information necessary to make an I.R.C. §4980H certification. In particular, HHS does not have information about whether a premium tax credit was allowed or paid. Even if HHS might otherwise get around this problem by requesting the necessary information from the IRS, this is not an option here because the IRS is statutorily prohibited from disclosing this information to HHS.

The rules governing the inspection and disclosure of returns and return information are set forth in I.R.C. §6103. I.R.C. §6103(a) provides a general rule that "returns" and "return information" shall be confidential, and shall not be disclosed "except as authorized by this title." I.R.C. §6103(a). The term "return" is defined to include "any tax or information return, declaration of estimated tax, or claim for refund … which is filed with the Secretary [of the Treasury] …" I.R.C. §6103(b)(1). The term "return information" is broadly defined to include "a taxpayer's identity" and "the nature, source, or amount of his ...

credits." I.R.C. §6103(b)(2)(A). Thus, the extent to which a premium tax credit was allowed or paid falls squarely within the definition of return information and presumptively cannot be disclosed to HHS.

The general prohibition against disclosure in I.R.C. §6103(a) is subject to a series of exceptions. I.R.C. §6103(c)-(o). The relevant exception here is I.R.C. §6103(*l*)(21), which authorizes the IRS to disclose certain return information to HHS in connection with determining whether an individual seeking to purchase health coverage through an Exchange is *eligible* for a premium tax credit. I.R.C. §6103(*l*)(21) (titled "Disclosure of return information to carry out eligibility requirements for certain programs"). However, I.R.C. §6103(*l*)(21) does not authorize the IRS to make a later-in-time disclosure to HHS that a "premium tax credit … *is allowed or paid* with respect to the employee," as required to make an I.R.C. §4980H certification. I.R.C. §4980H(a) (emphasis added); *see also* 42 U.S.C. §18081(f)(2)(B).

This issue is particularly acute in the case of individuals who do not apply for a premium tax credit when they purchase health coverage through an Exchange, but later claim the credit on their income tax

returns. Under those circumstances, HHS never makes a preliminary eligibility determination, and the only agency that considers the individuals' eligibility or entitlement to the credit is the IRS. *Supra*, pp. 10-11. But I.R.C. §6103 makes no provision for the IRS to disclose this determination to HHS, rendering HHS incapable of making an I.R.C. §4980H certification with respect thereto.

The District Court brushed aside this problem by pointing to ACA §1411(c) and (d), under which "numerous inter-agency communications [are] contemplated." (ROA.637.) But this reasoning collapses under its own weight. ACA §1411(c) and (d) provide that an Exchange can disclose certain information to HHS for the purpose of verifying individuals' *eligibility* for premium tax credits, *see* 42 U.S.C. §18081(c)(3), and that HHS can, in turn, disclose that information to the Secretary of the Treasury for the purpose of having the Treasury Department verify the individuals' *eligibility* for premium tax credits, *see* 42 U.S.C. §18081(d). But as we have explained, there is a difference between the initial determination that an employee is *eligible* for a premium tax credit and the later-in-time *payment or allowance* thereof. *Supra*, pp. 7-11. The fact that Congress authorized the Treasury

Department to disclose information to HHS in connection with the former, but not the latter, gives rise to an inference that the omission was intentional. *See Polselli v. Internal Revenue Serv.*, 598 U.S. 432, 439 (2023); *Hamdan v. Rumsfeld*, 548 U.S. 557, 578 (2006) (discussing the negative-inference canon).

   d.   To be sure, the District Court was correct that HHS would have the information necessary to certify that an *advance payment of the premium tax credit* had been made to an employee.  (ROA.637.)  And under a literal reading of I.R.C. §4980H, HHS would therefore be able to certify to the employer that, in the instance of such APTC, a premium tax credit had been "*paid* with respect to the employee." I.R.C. §4980H(a)(2) (emphasis added); *see also id.* §4980H(b)(1)(B).  But such a certification would serve no purpose.  ESRP liability is never imposed against an employer based solely on APTC, where the IRS might well disallow—and the employee might well have to repay—that credit following the IRS's review of information reported on Forms 1094-C, 1095-C, and 8962.  *Supra*, pp. 9-14.

   More fundamentally, HHS would never be in a position to certify that a premium tax credit had been "*allowed* … with respect to the

employee."[5]  I.R.C. §4980H(a)(2) (emphasis added); *see also id.* §4980H(b)(1)(B).  Requiring that HHS make the certification contemplated by I.R.C. §4980H would thus improperly render this portion of the statute a nullity.  *See Corley v. United States*, 556 U.S. 303, 314 (2009) (courts should construe statutes "so that no part will be inoperative or superfluous, void or insignificant") (citation and internal quotations omitted).

e.     Even assuming that the IRS *could* disclose information to HHS about whether a premium tax credit was allowed or paid, so that HHS could use that information to make an I.R.C. §4980H certification, it would make far more sense for the IRS to simply use that information to make the certification itself.  Of course, nothing would prevent Congress from creating a circular arrangement in which it directed that the IRS disclose information to HHS, that HHS make a certification based on that information, and that the IRS then rely on the HHS certification to assess an ESRP liability.  But in the absence of any clear indication that Congress intended such an arrangement, this Court

---

[5] In I.R.C. §36B, Congress made clear that Treasury's advance payment of a premium tax credit was distinct from the later-in-time allowance thereof.  I.R.C. §36B(f).

should avoid reading this type of inefficiency into the statute. *See E.E.O.C. v. Louisville & Nashville R.R. Co.*, 505 F.2d 610, 613 (5th Cir. 1974) ("There is a presumption against a construction which would render a statute ineffective or inefficient.") (citation and internal quotations omitted).

      f.    A regulation promulgated by HHS reinforces the conclusion that responsibility for making an I.R.C. §4980H certification belongs to the IRS:

> Certification program for employers. As part of its determination of whether an employer has a liability under section 4980H of the Code, *the Internal Revenue Service will adopt methods to certify to an employer* that one or more employees has enrolled for one or more months during a year in which a [Qualified Health Plan] for which a premium tax credit or cost-sharing reduction is allowed or paid.

45 C.F.R. §155.310(i) (emphasis added). Although courts no longer defer to agency interpretations of an ambiguous statutory provision, they "'may properly resort [to those interpretations] for guidance.'" *Loper Bright Enters. v. Raimondo*, 603 U.S. 369, 394 (2024) (quoting *Skidmore v. Swift & Co.*, 323 U.S. 134, 140 (1944)). And the interpretation reflected in the HHS regulation is entitled to particular respect because it was promulgated in close proximity to the Affordable

Care Act's effective date, was issued through notice-and-comment rulemaking, and reflects the Government's consistent, considered position over the last decade. *See Loper Bright*, 603 U.S. at 386.

The District Court afforded no respect to 45 C.F.R. §155.310(i), brushing it aside as an impermissible "delegation" of authority from HHS to the IRS. (ROA.642.) The District Court's approach badly mischaracterizes the regulation. Although one agency does sometimes delegate authority to another by regulation, such delegations generally are made expressly. *E.g.*, 31 C.F.R. §1010.810(g) ("The authority to enforce the provisions of 31 U.S.C. 5314 and §§ 1010.350 and 1010.420 of this chapter has been redelegated from FinCEN to the Commissioner of Internal Revenue …"). The HHS regulation does nothing of the sort. Instead, it simply sets out HHS's interpretation of the relevant statutory provisions and, as such, should have been accorded due respect. *See Loper Bright*, 603 U.S. at 385-86; *see also infra*, pp. 49-50.

### 2. I.R.C. §4980H(a)'s cross-reference to ACA §1411 does not create a requirement that the certification be made by HHS

In holding that only HHS can make the certification contemplated by I.R.C. §4980H, the District Court focused on §4980H's requirement that certification be made "under section 1411 of the Patient Protection and Affordable Care Act." (ROA.634 (quoting I.R.C. §4980H(a)(2)); *see also* I.R.C. §4980H(b)(1)(B). The Government urged the court to interpret this phase as "in accordance with" or "consistent with" ACA §1411. Under that reading, the IRS would be authorized to—and certainly not precluded from—making the certification, but would need to do so in accordance with the standards set out in ACA §1411. (ROA.100-101, 195.) For its part, Faulk urged the court to interpret this phrase as "by reason of the authority" of ACA §1411. And because ACA §1411 only confers authority on HHS, Faulk further urged that HHS must make the certification. (ROA.169-170.)

The District Court rejected the Government's interpretation and adopted Faulk's. However, the court acknowledged that its interpretation was neither "the only possible interpretation of the statutes in question" nor "without its challenges." (ROA.635, 638.) The

primary "challenge" with the court's interpretation is that it reads ACA §1411 as authorizing HHS to make the required certification, even though ACA §1411 does nothing of the sort. By reading such an authorization into ACA §1411 that appears nowhere in its text, rather than adopting the Government's interpretation that presents no such problem, the court erred.

> **a.** **The meaning of "'under section 1411' of the ACA" must be determined based on the context in which it appears**

I.R.C. §4980H does not define the preposition "under." The word should therefore be afforded its commonly understood meaning. *See Commissioner v. Soliman*, 506 U.S. 168, 174 (1993). However, the word "under" is susceptible to many different meanings. *Kucana v. Holder*, 558 U.S. 233, 245 (2010); *see* https://www.dictionary.com/browse/under (listing 18 definitions); *under*, *Black's Law Dictionary* (12th ed. 2024) (listing 17 definitions). Accordingly, its meaning in any particular statute must be determined based on the context in which it appears. *Kucana*, 558 U.S. at 245.

For some statutes, courts have determined that "under" means "in accordance with" or "consistent with." *E.g., Kirtsaeng v. John Wiley &*

*Sons, Inc.*, 568 U.S. 519, 530 (2013) ("under" meant "in accordance with" or "in compliance with");[6] *see* https://www.dictionary.com/browse/under (definition 14); *under*, *Black's Law Dictionary* (12th ed. 2024) (definition 15). For other statutes, courts have determined that "under" means "pursuant to" or "by reason of the authority of." *E.g.*, *Nat'l Ass'n of Mfrs. v. Dep't of Def.*, 583 U.S. 109, 124 (2018); *see also under*, *Black's Law Dictionary* (12th ed. 2024) (definition 15). As discussed below, the relevant context confirms that the Government's interpretation of "'under section 1411' of the ACA" is sound and that the District Court's interpretation is fallacious.

      **b.** **The best interpretation of "'under section 1411' of the ACA" is "'in accordance with section 1411' of the ACA"**

As we have just explained, "under" sometimes means "in accordance with" or "consistent with." Applying this meaning in the

---

[6] *See also In re Ten Eyck Co., Inc.*, 40 F. Supp. 270, 271 (N.D.N.Y. 1941), *aff'd*, 126 F.2d 806 (2d Cir. 1942); *Mala Geoscience AB v. Witten Techs., Inc.*, 2007 WL 1576318, at *5 (D.D.C. May 30, 2007) (citing *Davis v. Monroe Cty. Bd. of Educ.*, 526 U.S. 629, 659 (1999)); *Unwired Planet, Inc. v. Microsoft Corp.*, 193 F. Supp. 3d 336, 342 (D. Del. 2016); *accord* B. Garner, *A Dictionary of Modern Legal Usage* at 721, 896 (2d ed. 1995) (defining "pursuant to" as "in accordance with," and providing that "under" is generally a preferable substitute for "pursuant to" when referring to a statute).

context of I.R.C. §4980H, the provision requires that certifications be made "in accordance with" ACA §1411.  Thus, when certifying to an applicable large employer that at least one of its full-time employees had enrolled "in a qualified health plan with respect to which an applicable premium tax credit … [was] allowed or paid with respect to the employee," the IRS would be required to apply the standards set out in ACA §1411.  I.R.C. §4980H(a)(2); *see also id.* §4980H(b)(1)(B).

The District Court rejected this interpretation, concluding that it would render the phrase "'under section 1411' of the ACA" meaningless.  (ROA.635.)  This does not withstand scrutiny.  Under the Government's interpretation, the purpose of the phrase "'under section 1411' of the ACA" is to tell the IRS where to find the standards that it must follow when making its certification.  Those standards include, among other things, requirements for an employee to qualify for a premium tax credit.  *E.g.*, 42 U.S.C. §18081(a)(1) (citizenship and residency requirements), (a)(2) (income requirements), (a)(2)-(3) (coverage requirements); *see also id.* §18081(a) (directing HHS to establish a program for determining the foregoing).  And it is, in fact, common for one statutory provision to direct an agency to standards located in

another statutory provision.  *E.g.*, I.R.C. §§139K(b) (incorporating the definitions provided "under section 25F(c)"), 6726(d)(1)(B) (tying penalty amounts to "the cost-of-living adjustment determined under section 1(f)(3)"), 7466(b) (determinations about discipline of Tax Court judges "shall be based on the grounds for removal of a judge from office under section 7443(f)").

Here, Congress had a particular interest in directing the IRS to the standards in ACA §1411.  The standards governing tax liability are ordinarily located in the Internal Revenue Code.  Indeed, in considering an employer's potential ESRP liability, the IRS must determine whether the employer qualifies as an "applicable large employer" by resort to the definition in I.R.C. §4980H(c)(2), and it must determine the amount of the employer's liability by resort to the formulas in I.R.C. §4980H(a) and (b).  But the IRS must also look outside the Internal Revenue Code for some of the standards governing ESRP liability.  In particular, it must determine whether a premium tax credit is appropriately allowed or paid to an employee by resort to the standards and procedures discussed in ACA §1411.  Under the circumstances, it was logical and appropriate to direct the IRS to ACA §1411.

Of course, telling the IRS where to find some of the standards governing ESRP liability may not have seemed particularly significant to the District Court. "[B]ut a job is a job, and enough to bar the rule against redundancy from disqualifying an otherwise sensible reading." *Polselli*, 598 U.S. at 443 (citation and internal quotations omitted). And that sensible reading becomes all the more compelling when contrasted with the court's fatally flawed interpretation, discussed below.

> **c.** **The District Court's interpretation of "'under section 1411' of the ACA" as "'by reason of the authority of' section 1411 of the ACA" is fatally flawed**

i.      The District Court chose to interpret "under section 1411" of the ACA as "by reason of the authority" of section 1411 of the ACA. (ROA.634-635.) While this meaning might work in a different statutory context, it immediately hits strong headwinds here. As the District Court and Faulk acknowledged, ACA §1411 never authorizes HHS (or anyone else) to "certify" or make a "certification" in connection with the employer mandate or ESRPs. (ROA.171, 635.) This omission, standing alone, should have given the court pause.

To get around this problem, the District Court turned to ACA §1411(e), which requires that HHS "notify" and provide "notice" to

certain employers that (i) one of their employees has been determined eligible for a premium tax credit and (ii) the employers have the right to an administrative appeal with HHS to dispute this determination. 42 U.S.C. §18081(e). The court concluded that the "notice" contemplated by ACA §1411(e) is the same as the "certification" contemplated by I.R.C. §4980H. On this reading, ACA §1411 does, in fact, confer authority on HHS to make the certification contemplated by I.R.C. §4980H. (ROA.635.) But in adopting that reading, the court created multiple, unresolvable problems that demonstrate the fallacy of its reasoning.

ii. As a threshold matter, the words "certification" and "certify" are not synonymous with the words "notice" and "notify." Certification is "[t]he act of attesting; esp., the process of giving someone or something an official document stating that a specified standard or qualified has been met." *Certification*, *Black's Law Dictionary* (12th ed. 2024); https://www.dictionary.com (defining "certification" as "the act of certifying" and "certify" as "to attest as certain; give reliable information of; confirm"). A "notice," by contrast, is a "[l]egal notification required by law or agreement." *Notice*, *Black's Law*

*Dictionary* (12th ed. 2024); https://www.dictionary.com/browse/notice (defining "notice" as "a note, placard, or the like conveying information or a warning").

Nor do the relevant statutes use the terms "certification" and "notice" interchangeably. I.R.C. §4980H requires "certification" prior to the imposition of ESRP liability, but it never refers to that "certification" as a "notice." *See* I.R.C. §4980H(a)(2), (b)(1)(B). I.R.C. §4980H also uses the term "notice" in an unrelated context, namely "notice and demand" for payment, but it never refers to this "notice" as a "certification." *See* I.R.C. §4980H(d)(1).

The distinction between the terms "certification" and "notice" is preserved and reinforced in ACA §1411. ACA §1411(e) provides that an Exchange shall "notify," and provide "notice" to, an employer that one or more of its employees is eligible for a premium tax credit, that the employer may be liable for an ESRP, and that the employer may avail itself of an administrative appeal. 42 U.S.C. §18081(e)(4)(B)(iii), (C). However, ACA §1411 never refers to that "notice" as a "certification." ACA §1411 also uses the term "certification" in an unrelated context, namely "certification" that an *individual* is exempt from the Affordable

Care Act's mandate to purchase health insurance, but it never refers to that "certification" as a "notice." *See* 42 U.S.C. §18081(a)(4), (b)(5), (e)(2)(B), (e)(4)(B)(iv). Thus, usage confirms that the two terms carry different meanings.

Where the relevant statutes consistently distinguish between certifications and notices, the District Court should have honored that distinction. *See Mohamad v. Palestinian Auth.*, 566 U.S. 449, 456 (2012) ("We generally seek to respect Congress's decision to use different terms to describe different categories of people or things."). After all, "'[a] word or phrase is presumed to bear the same meaning throughout a text; a material variation in terms suggests a variation in meaning.'" *Landry's, Inc. v. Insur. Co. of the State of Pa.*, 4 F.4th 366, 370 (5th Cir. 2021) (quoting Antonin Scalia & Bryan A. Garner, *Reading Law: The Interpretation of Legal Texts* 170 (2012)).

iii.　The distinction between the certification contemplated by I.R.C. §4980H and the notice contemplated by ACA §1411 is not merely linguistic. In addition to using different words to describe the certification and notice requirements, the Government and Faulk agree that Congress made the two different in substance. (ROA.171 ("We

tend to agree with the United States that the employer notice requirement of Section 1411 is not, by itself, coterminous with what Congress envisioned when it wrote, 'certified to the employer under Section 1411.'").)  As discussed below, there are at least five substantive differences between I.R.C. §4980H certifications and ACA §1411 notices, reinforcing the conclusion that the District Court erred by lumping the two together.

First, ACA §1411 notices and I.R.C. §4980H certifications address different stages in the process of applying for and obtaining a premium tax credit.  As to ACA §1411(e), an employer receives notice following HHS's advance determination that an employee "*is eligible for* a premium tax credit."  42 U.S.C. §18081(e)(4)(B)(iv) (emphasis added).  However, as to I.R.C. §4980H, the employer receives a different, later-in-time certification that such "premium tax credit ... *is allowed or paid* with respect to the employee."  I.R.C. §4980H(a)(2), (b)(1)(B) (emphasis added); *supra*, pp. 7-11.

Second, different facts are taken into account when determining whether to issue ACA §1411 notices and I.R.C. §4980H certifications.  ACA §1411 notices are issued following an employee eligibility

determination, which is made without regard to whether the employee worked full-time or part-time. 42 U.S.C. §18081(e)(4)(B)(iii). I.R.C. §4980H certifications, however, are issued only after a premium tax credit has been allowed or paid to "at least one full-time employee." I.R.C. §4980H(a)(2); *see id.* §4980H(b)(1)(B) (certifications issued based on determination regarding "1 or more full-time employees"); *see also* 77 Fed. Reg. 18310-01, at *18369 (Mar. 27, 2012).

Third, ACA §1411 notices are, in some respects, issued to a broader pool of employers than I.R.C. §4980H certifications. ACA §1411 notices are issued without regard to an employer's size, once HHS has made an advance determination that an employee is eligible for a premium tax credit. 42 U.S.C. §18081(e)(4)(B)(iii). I.R.C. §4980H certifications, by contrast, are only issued to "applicable large employers," *i.e.*, generally those with at least 50 full-time employees, including full-time equivalent employees. I.R.C. §4980H(a), (b), (c)(2); *see also* 78 Fed. Reg. 4594-01, at *4654; 77 Fed. Reg. 18310-01, at *18356.

Fourth, ACA §1411 notices are, in other respects, issued to a narrower pool of employers than I.R.C. §4980H certifications. ACA

§1411 notices are issued only to employers that failed to offer health coverage at all or offered unaffordable coverage. 42 U.S.C. §18081(e)(4)(B)(iii) (requiring notice to employers that did "not provide minimum essential coverage" or provided "coverage but it is not affordable"). But I.R.C. §4980H certifications are issued to every employer that is subject to an ESRP. I.R.C. §4980H(a), (b). This includes not only employers that failed to offer health coverage at all or offered unaffordable coverage, but also employers who offered coverage that did not provide minimum value. *Id.* §4980H(a)(1), (b)(1)(A).

Fifth, ACA §1411 notices and I.R.C. §4980H certifications have a different temporal sweep. ACA §1411 notices address HHS's advance determination that an employee is eligible for a premium tax credit. 42 U.S.C. §18081(e)(4)(B)(iii). This determination is made once a year, at the time the employee applies for financial assistance through the Exchange. By contrast, I.R.C. §4980H certifications address, on a month-by-month basis, the extent to which a premium credit was allowed or paid with respect to a full-time employee who enrolled in insurance coverage through an Exchange. I.R.C. §4980H(a)(2), (b)(1)(B) (certification is made "for such month" that a credit is allowed or paid).

iv.    The distinction between the notice contemplated by ACA §1411(e) and the certification contemplated by I.R.C. §4980H is buttressed by the relevant HHS regulation, 45 C.F.R. §155.310.  In 45 C.F.R. §155.310(h), HHS addressed the method by which an Exchange notifies employers of its advance determination that an employee is eligible for a premium tax credit.  In 45 C.F.R. §155.310(i), HHS stated that the IRS would separately adopt methods to make the later-in-time I.R.C. §4980H certification to applicable large employers that the prerequisites to ESRP liability were satisfied.

In explaining an interim version of this guidance, HHS made clear that the distinction between ACA §1411 notices and I.R.C. §4980H certifications was a function of the statutory scheme enacted by Congress:  "The statute makes clear that the two processes are distinct." 77 Fed. Reg. 18310-01, at *18369.  As to the former, HHS explained:

> Under sections 1411 and 1412 of the Affordable Care Act, the Exchange will make eligibility determinations for advance payments of the premium tax credit and cost-sharing reductions, notify employers that a payment may be assessed and that the employer has a right to appeal to the Exchange, and provide information to the Treasury.

*Id.*  As to the latter, HHS emphasized that "[t]he assessment of shared responsibility payments under section 4980H of the Code is within the

jurisdiction of the Treasury." *Id.* And in the subsequent notice of proposed rulemaking that preceded the final regulation, HHS reiterated that the "certification program" employed in connection with Treasury's assessment of ESRPs "is distinct from the notification specified in [ACA] section 1411(e)(4)(B)(iii) and paragraph (h)." 78 Fed. Reg. 4594-01, at *4636. Thus, HHS has long recognized the different functions of, and responsibility for, the advance eligibility notices sent to employers, on one hand, and the later-in-time certifications that serve as a prerequisite to ESRP liability, on the other.

v.     As we just explained, ACA §1411 notices and I.R.C. §4980H certifications address different steps in the ESRP process, take into account different facts, are issued to different categories of employers, and have a different temporal sweep. The District Court hurried past these issues, opining that nothing would prevent HHS from issuing notices that go beyond the requirements of ACA §1411 and thereby "comply with both" ACA §1411 and the seemingly more demanding I.R.C. §4980H. (ROA.637.) For example, the court suggested that "HHS and the Exchange could … facilitate monthly certification" to comply with I.R.C. §4980H even though nothing in ACA §1411 provides

for HHS to issue notices with this frequency. (*Id.*) But this just illustrates why the court's interpretation of the phrase "'under section 1411' of the ACA" cannot be right. If nothing in ACA §1411 contemplates HHS issuing monthly notices, then it would make little sense to say that HHS was doing so "'by reason of the authority' of ACA § 1411." And the court never explained how, as a practical matter, HHS would effectuate the issuance of monthly notices when the corresponding eligibility determination is made only once a year. *Supra*, p. 48.

Moreover, even assuming that HHS had the authority and ability to issue notices more frequently than contemplated by ACA §1411, this would not resolve the other problems that result from merging I.R.C. §4980H certifications into ACA §1411 notices. In particular, HHS would have to ignore ACA §1411's directive that it notify employers of its advance determination that one of their employees was *eligible* for a premium tax credit and instead wait to issue such notices until the later *allowance or payment* of such a credit (or issue multiple notices, addressed to a series of different determinations, even though nothing in §1411 contemplates such a process). HHS would also have to ignore

ACA §1411's directive that it issue notices without regard to whether an employee who purchased coverage through an Exchange worked full-time or part-time and instead issue notices only with respect to full-time employees. HHS would further have to ignore ACA §1411's directive that it issue notices without regard to employer size, and instead issue notices only to applicable large employers. And even as HHS was issuing fewer notices than directed by ACA §1411 in some respects, it would have to issue more notices than directed in another respect, *i.e.*, by issuing notices to employers who offered coverage that did not provide minimum value, even though nothing in ACA §1411 so requires. At this point, it would make little sense—and, indeed, would approach glaring absurdity—to say that HHS was issuing notices "'by reason of the authority' of ACA § 1411."

Nor do the problems end there. Merging I.R.C. §4980H certifications into ACA §1411 notices would require HHS to apply definitions and requirements found in the Internal Revenue Code, notwithstanding I.R.C. §7801(a)(1)'s directive that the Secretary of the Treasury shall administer and enforce the Code. *Supra*, pp. 28-29. Even more incongruous, it would sometimes make federal ESRP

liability turn on the conduct of States.  After all, it is the Exchanges that are charged with providing ACA §1411 notices, and many Exchanges are State-run.  42 U.S.C. §§18031(b), 18081(e)(4)(B)(iii).

_____

To its credit, the District Court acknowledged that the notice contemplated by ACA §1411 and the certification contemplated by I.R.C. §4980H "may not be the same."  (ROA.636.)  And the interplay between the relevant provisions of the Affordable Care Act is undoubtedly complex.  But the fact "[t]hat a statute is complicated does not mean it is ambiguous.  It just means that the judge needs to work harder to determine—in the sense of ascertain—the statute's meaning." Raymond M. Kethledge, *Ambiguities and Agency Cases:  Reflections After (Almost) Ten Years on the Bench*, 70 VAND. L. REV. EN BANC 315, 319 (2017).  When the text of the relevant provisions is scrutinized and the canons of interpretation are faithfully applied, it becomes untenable to conflate ACA §1411 notices with I.R.C. §4980H certifications.

### 3. The fact that certification must occur before the imposition of liability does not create a requirement that HHS make the certification

a.     The District Court attempted to prop up its interpretation of I.R.C. §4980H by noting that the certification requirement is phrased in the past tense, namely that "at least one full-time employee of the applicable large employer *has been certified* to the employer under section 1411" of the ACA.  I.R.C. §4980H(a) (emphasis added).  The court opined that this meant certification must occur before the IRS becomes involved in the ESRP process.  (ROA.635-636.)  Here again, the court's interpretation was divorced from the statutory text.

It is, of course, true that I.R.C. §4980H's certification requirement is phrased in the past tense.  It is also true that the provision incorporates a temporal requirement, namely that certification must occur before an ESRP is imposed.  I.R.C. §4980H(a), (b).  This follows from the provision's plain text, which provides that "*[i]f*" certain requirements are met, "*then* there is hereby imposed on the employer an assessable payment."  I.R.C. §4980H(a)(1), (2) (emphasis added).  And those requirements include that a certification has been made.  I.R.C. §4980H(a)(2), (b)(1)(B).

This temporal requirement was satisfied here. In a Letter 226-J that *proposed* an ESRP liability for 2019, the IRS provided a certification to Faulk. (ROA.12, 109-114.) Following further administrative proceedings, the liability was then *imposed and assessed*. (ROA.21, 461-472.) Accordingly, the certification occurred prior to the imposition of liability, which is all that I.R.C. §4980H requires.

b. The District Court nonetheless interpreted I.R.C. §4980H as including a further temporal requirement, namely that certification be made not only before ESRP liability is imposed but also "before the IRS enters the picture." The court then concluded that this requirement was not satisfied here because the certification was made by the IRS. (ROA.635-636.)

As this Court held in rejecting the argument that a different statute should be interpreted to include a temporal requirement untethered from the statutory language, "[t]he problem with this interpretation is that it has no basis in the text of the statute." *Swift v. Commissioner*, 144 F.4th 756, 770 (5th Cir. 2025) (citation and internal quotations omitted). We reiterate that, as the District Court

acknowledged elsewhere in its opinion, I.R.C. §4980H says nothing about which agency must make the certification. (ROA.634); *supra*, pp. 26-27. As a necessary corollary, I.R.C. §4980H says nothing about the certification being made by an agency other than the IRS. And I.R.C. §4980H certainly does not say that the certification must "take place before the IRS enters the picture." (ROA.636.) In crafting such a requirement out of whole cloth, the court compounded its other errors.

### 4. The District Court's policy concerns do not justify rewriting I.R.C. §4980H

Finally, the District Court's opinion seemed driven by its concern that HHS has not been complying with its obligation to issue the notices contemplated by ACA §1411. (ROA.636, 638.) But even if HHS failed to comply with the ACA §1411 notice requirement, it would not be a basis for invalidating Faulk's ESRP liability for 2019.

First and foremost, no provision of the Affordable Care Act makes the issuance of an ACA §1411 notice a condition precedent to ESRP liability. As discussed, Congress conditioned the imposition of ESRP liability on an I.R.C. §4980H certification. I.R.C. §4980H(a)(2), (b)(1)(B). However, Congress did not similarly condition ESRP liability on the issuance of an ACA §1411 notice. Where Congress chose to

condition the imposition of ESRP liability on the former requirement,
but not the latter, that choice should be respected. *See Polselli*,
598 U.S. at 439.

Indeed, when Congress wants to condition the imposition of a tax
or tax penalty on compliance with a procedural requirement, it does so
expressly. *E.g.*, I.R.C. §6672(b)(1) ("No penalty shall be imposed under
subsection (a) unless the Secretary notifies the taxpayer in writing by
mail to an address as determined under section 6212(b) or in person
that the taxpayer shall be subject to an assessment of such penalty.");
*see also* I.R.C. §§6213(a) ("Except as otherwise provided in section 6851,
6852, or 6861 no assessment of a deficiency in respect of any tax
imposed by subtitle A, or B, chapter 41, 42, 43, or 44 … shall be made …
until such notice has been mailed to the taxpayer …"), 6751(b)(1) ("No
penalty under this title shall be assessed unless the initial
determination of such assessment is personally approved (in writing) by
the immediate supervisor …").  Congress did not do so for ACA §1411
notices.  Thus, even if HHS were required to issue an ACA §1411 notice
and failed to do so, that failure would not justify invalidating Faulk's
ESRP liability—regardless of how "important" the notice requirement

may be.  (ROA.636, 638); *see Pac. Gas & Elec. Co. v. F.E.R.C.*, 113 F.4th 943, 950 (D.C. Cir. 2024) ("[p]olicy concerns cannot override the text of a statutory provision").

At all events, it is unclear how Faulk was prejudiced in any way relevant to this case by not receiving an ACA §1411 notice.  The notice would have informed Faulk of the availability of an HHS appeal in which to dispute HHS's "determination that the employer does not provide minimum essential coverage through an employer-sponsored plan or that the employer does provide that coverage but it is not affordable coverage with respect to an employee."  42 U.S.C. §18081(f)(2)(A).  But Faulk concedes that it offered no insurance coverage at all in 2019 (ROA.12, 222), meaning that there was nothing for it to dispute in such an appeal.

Of course, Faulk has speculated that, if it had known some of its employees were obtaining health insurance through the Exchange in 2019, then it might have offered them the opportunity to purchase coverage in later years and thereby avoided ESRP liability in those years.  (ROA.222.)  But even if we were to credit Faulk's speculation about how it would have hypothetically behaved in 2020, 2021, etc.,

that would have no bearing on Faulk's ESRP liability for 2019—the only year for which it seeks a refund here.

Notably, Faulk is not left without recourse for HHS's alleged failure to comply with ACA §1411. To the extent that Faulk believes it is entitled to, and would benefit from, the HHS notice and appeal process (either for 2019 or on a going-forward basis), it could bring a suit to compel that process. But where Congress has failed to condition the imposition of ESRP liability on HHS's compliance with ACA §1411, this Court should not rewrite the relevant statutes to do otherwise.

## II.

### The District Court erred in declaring the HHS regulation invalid and setting it aside

In addition to ordering a refund of the ESRP that Faulk paid for 2019, the District Court declared that an HHS regulation, which supports the Government's position that the IRS can make the certification contemplated by I.R.C. §4980H, was invalid and should be set aside. (ROA.641-642.) As discussed below, that ruling was incorrect on the merits and, at all events, the court lacked jurisdiction to award such relief.

## A.  The HHS regulation reflects a correct interpretation of the relevant statutes

As we explained, 45 C.F.R. §155.310(i) provides that "the Internal Revenue Service will adopt methods to certify to an employer that one or more employees has enrolled for one or more months during a year in which a [Qualified Health Plan] for which a premium tax credit or cost-sharing reduction is allowed or paid." *Supra*, p. 35.  As we further explained, the regulation represents the best reading of the relevant statutes, namely that the IRS is charged with making the certification required by I.R.C. §4980H.  *Supra*, pp. 24-59.  It follows that the regulation does not conflict with those statutes.  Consequently, the District Court's order setting the regulation aside is erroneous and should be reversed.

## B.  At all events, the tax exception to the Declaratory Judgment Act barred the declaratory relief awarded

1.  Separate from the merits, the District Court lacked jurisdiction to award declaratory relief invalidating the HHS regulation.  The Internal Revenue Code establishes a comprehensive scheme of administrative and judicial avenues that Congress has designed to resolve tax disputes.  A series of statutory provisions

channel such disputes into those avenues and away from freestanding suits seeking equitable relief. Relevant here are the Anti-Injunction Act ("AIA"), I.R.C. §7421(a), and the tax exception to the Declaratory Judgment Act ("DJA"), 28 U.S.C. §2201(a),[7] each of which operates as a jurisdictional bar to suits that fall within its respective scope. *Rivero v. Fid. Invests., Inc.*, 1 F.4th 340, 344-45 (5th Cir. 2021).

With certain enumerated exceptions, the AIA provides that "no suit for the purpose of restraining the assessment or collection of any tax shall be maintained in any court by any person, whether or not such person is the person against whom such tax was assessed." I.R.C. §7421(a). That "broad and mandatory language," *United States v. Clintwood Elkhorn Mining Co.*, 553 U.S. 1, 12 (2008), "could scarcely be more explicit" in precluding challenges to assessment and collection outside the highly reticulated scheme enacted by Congress. *Bob Jones Univ.*, 416 U.S. at 736. Consequently, the AIA has "almost literal effect," precluding any suit brought for the purpose of restraining assessment or collection that falls outside that scheme. *Id.* at 737.

---

[7] For convenience, we use the acronym "DJA" to refer to the exception, not the Act itself.

The Declaratory Judgment Act generally provides that:

> [i]n a case of actual controversy within its jurisdiction, … any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration …

28 U.S.C. §2201(a). However, the DJA expressly excepts the award of such declaratory relief "with respect to Federal taxes." *Id.* Like the AIA, the DJA is subject to certain enumerated exceptions, although the exceptions enumerated in the DJA are different from the exceptions enumerated in the AIA. *Compare id. with* I.R.C. §7421(a).

The Supreme Court has long held that the DJA's prohibition against declaratory relief is "at least as broad as the prohibition of the Anti-Injunction Act." *Alexander v. Ams. United Inc.*, 416 U.S. 752, 759 n.10 (1974). Some courts, though acknowledging that the AIA and DJA were enacted at different times and use different language, have concluded that the two prohibitions are "coterminous." *E.g.*, *Cohen v. United States*, 650 F.3d 717, 730-31 (D.C. Cir. 2011) (en banc). But this Court has concluded that the textual differences between the two statutes must be respected. *Rivero*, 1 F.4th at 345-46. Under this Court's precedent, the DJA therefore bars a suit seeking declaratory relief with respect to Federal taxes, even if the suit falls outside the AIA

because it "does not involve 'the assessment or collection of any tax.'"
*Id.*

2.     In Count III of its complaint, Faulk sought a declaratory
judgment that 45 C.F.R. §155.310(i) conflicted with the relevant
statutes and was, therefore, "unlawful and void." (ROA.20-21.) Faulk's
complaint made clear that the injury from which it sought relief was the
IRS's reliance on the regulation "to pursue ESRP excise taxes against
Faulk Company." (ROA.17.) In its opposition to the Government's
motion to dismiss, Faulk doubled down on this position, complaining
that the IRS Independent Office of Appeals may, in pending
administrative appeals concerning its ESRP liability for post-2019
years, rely on the regulation when considering whether to compromise
that liability. (ROA.165.) Faulk further complained that the IRS may
rely on the regulation to assert ESRP liabilities against it in the future.
(ROA.165.) There is, therefore, no real dispute that Count III seeks
declaratory relief with respect to Federal taxes. As such, it runs
headlong into the DJA and should have been dismissed for lack of
jurisdiction. *See Rivero*, 1 F.4th at 346 (DJA barred suit seeking relief
that "would inevitably involve sifting through the applicable Treasury

regulations … in order, ultimately, to make a determination 'with respect to Federal taxes'"); *Optimal Wireless*, 77 F.4th at 1072-73 (DJA barred suit seeking to prevent the IRS from assessing ESRPs without first complying with certain procedural requirements); *Gilbert v. United States*, 998 F.3d 410, 414-15 (9th Cir. 2021) (DJA barred suit seeking declaratory judgment "that withholding funds as required by [tax] rules from the Contract price is not a breach of the Contract").

3.    The District Court nonetheless held that the DJA was inapplicable based on the reasoning from the Supreme Court's decision in *CIC Servs., LLC v. Internal Revenue Serv.*, 593 U.S. 209 (2021). (ROA.640-641.)  The court's reliance on *CIC Services* was misplaced for two reasons.

First, the District Court cited *CIC Services* for the proposition that "[b]oth the Declaratory Judgment Act and Anti-Injunction Act apply 'when the target of a requested injunction is a tax obligation.'" (ROA.640-641 (quoting *CIC Servs.*, 593 U.S. at 218).)  However, *CIC Services* addressed only the AIA.  593 U.S. at 211-26.  It did not mention, let alone interpret, the DJA.  The District Court should have therefore followed this Court's DJA precedent, which provides that the

DJA should be applied according to its own terms and not through the lens of the narrower AIA. *See Rivero*, 1 F.4th at 345-46. And when the DJA is so applied, it bars Count III, as we have just explained.

Second, even if this Court were to apply the reasoning from *CIC Services* to the DJA, the DJA would still bar Count III of Faulk's complaint. As background, CIC Services acted as a "material advisor" to participants in micro-captive insurance arrangements. Based on an IRS notice, CIC Services was required to report information about those arrangements to the IRS, which the IRS might potentially use to determine tax adjustments to the returns of CIC Services' clients (but not CIC Services' own returns). Nonetheless, if CIC Services failed to submit the required information, it was potentially subject to (i) a civil penalty that was treated as a tax for purposes of the AIA and (ii) criminal prosecution if its failure to comply were willful. CIC Services brought suit before the reporting obligation went into effect, and thus prior to any potential civil or criminal liability, seeking to enjoin the reporting obligation. *CIC Services,* 593 U.S. at 214-15, 217.

The Supreme Court held that the purpose of the suit was to challenge a reporting obligation, rather than to restrain assessment or

collection.  Furthermore, based on three factors, the Court concluded that the suit was not "a tax action in disguise."  First, the IRS notice "impose[d] affirmative reporting obligations, inflicting costs separate and apart from the statutory tax penalty."  Second, CIC Services stood "nowhere near the cusp of tax liability," where the "reporting rule and the statutory tax penalty are several steps removed from each other."  Third, even if the tax penalty were enjoined, CIC Services would remain subject to the reporting requirement, with any violation "punishable … by separate criminal penalties."  *CIC Servs.,* 593 U.S. at 219-22.

The Supreme Court emphasized that CIC Services' suit fell outside the AIA because it "contest[ed], and s[ought] relief from," a legal mandate separate and apart from any tax.  If the suit had been a "run-of-the-mine suit[ ]" that preemptively sought to foreclose tax liability, the AIA would have barred pre-enforcement review.  In such a case, the taxpayer's "sole recourse" would have been "to pay the tax and seek a refund."  *CIC Servs.*, 593 U.S. at 223-24.

This case is nothing like *CIC Services*.  In its complaint, Faulk sought to invalidate 45 C.F.R. §155.310(i) because "the IRS continues to pursue ESRP excise taxes against Faulk Company in reliance on" that

regulation. (ROA.17.) Thus, by Faulk's own admission, the "target" of its requested declaratory relief was "a tax obligation." *CIC Servs.*, 593 U.S. at 218. And under this Court's post-*CIC Services* precedent, where a taxpayer seeks to foreclose the assessment of taxes based on an "alleged procedural deficiency," the AIA deprives the court of jurisdiction. *Franklin v. United States*, 49 F.4th 429, 435 (5th Cir. 2022); *accord Optimal Wireless*, 77 F.4th at 1072-73; *Hancock Cty. Land Acquisitions, LLC v. United States*, 2022 WL 3449525, at *2 (11th Cir. 2022) (per curiam) (AIA barred suit seeking to prevent the IRS from taking step that was the "statutory prerequisite" to the assessment of taxes), *cert. denied*, 143 S. Ct. 577 (2023). The District Court's contrary conclusion—*i.e.*, that the DJA was inapplicable because the target of Count III was "the improper certification that stands as a procedural prerequisite to the tax"—cannot be squared with this precedent. (ROA.641.)

Indeed, each of the factors considered in *CIC Services* supports the conclusion that Faulk brought this suit to restrain the assessment and collection of taxes. First, Faulk has identified no obligations or costs that the regulation inflicts on it "separate and apart" from the

(allegedly improper) imposition of tax. *CIC Servs.*, 593 U.S. at 220.

Second, Faulk filed suit when it was on "the cusp tax liability," *id.* at

221, as the IRS had assessed an ESRP liability against it for one year

and proposed liabilities against it for multiple others. (ROA.18, 165,

222.) Third, Faulk would not be exposed to potential criminal liability

by challenging the validity of the regulation in a refund claim, rather

than a claim seeking equitable relief.

At bottom, Faulk's requested declaratory relief targets an

"impending or eventual tax obligation" in a real and immediate way.

*CIC Servs.*, 593 U.S. at 219. Consequently, its "sole recourse is to pay

the tax and seek a refund."[8] *Id.* at 224.

---

[8] Because it set aside the HHS regulation as conflicting with the relevant statutes, the District Court did not reach Faulk's claim that the regulation should also be set aside as arbitrary and capricious. (ROA.643.) However, Faulk's arbitrary-and-capricious claim would be barred by the DJA for the same reasons as its contrary-to-law claim.

## CONCLUSION

The judgment of the District Court should be reversed and the case remanded with instructions to enter judgment in favor of the Government.

Respectfully submitted,

BRETT A. SHUMATE
  *Assistant Attorney General*
JOSHUA WU
  *Deputy Assistant Attorney General*

*/s/ Geoffrey J. Klimas*

| | |
|---|---|
| ELLEN PAGE DELSOLE | (202) 514-8128 |
| GEOFFREY J. KLIMAS | (202) 307-6346 |

  *Attorneys*
  *Tax Division*
  *Department of Justice*
  *Post Office Box 502*
  *Washington, D.C. 20044*

DECEMBER 8, 2025

# CERTIFICATE OF COMPLIANCE

## Certificate of Compliance With Type-Volume Limit, Typeface Requirements, and Type-Style Requirements

1. This document complies with the word limit of Fed. R. App. P. 32(a)(7)(B) because, excluding the parts of the document exempted by Fed. R. App. P. 32(f):

    [X]   this document contains 12,985 words, **or**

    [ ]   this brief uses a monospaced typeface and contains \_\_\_\_\_ lines of text.

2. This document complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because:

    [X]   this document has been prepared in a proportionally spaced typeface using Word for Microsoft 365 in Century Schoolbook 14, **or**

    [ ]   this brief has been prepared in a monospaced typeface using _____ with _____.

3. All required privacy redactions have been made in accordance with Local Rule 25.2.13. The document has been scanned for viruses with the most recent version of a commercial virus scanning program and is free of viruses. The electronic and paper submissions are identical as required by Local Rule 25.2.1.

(s)   /s/ Geoffrey Klimas

Attorney for  Appellants

Dated:    December 8, 2025

## ADDENDUM

26 U.S.C. §4980H....................................................................71

26 U.S.C. §6103(a), (b)(1), (b)(2)(A), (*l*)(21)....................78

26 U.S.C. §7421(a) ...............................................................82

28 U.S.C. §2201(a) ...............................................................83

42 U.S.C. §18081(a)-(f) ........................................................84

42 U.S.C. §18082(a)(1), (a)(3), (b)(1), (c) ..........................97

45 C.F.R. §155.310(i) .........................................................100

**26 U.S.C. §4980H—Shared responsibility for employers regarding health coverage**

**(a) Large employers not offering health coverage.**—If--

**(1)** any applicable large employer fails to offer to its full-time employees (and their dependents) the opportunity to enroll in minimum essential coverage under an eligible employer-sponsored plan (as defined in section 5000A(f)(2)) for any month, and

**(2)** at least one full-time employee of the applicable large employer has been certified to the employer under section 1411 of the Patient Protection and Affordable Care Act as having enrolled for such month in a qualified health plan with respect to which an applicable premium tax credit or cost-sharing reduction is allowed or paid with respect to the employee,

then there is hereby imposed on the employer an assessable payment equal to the product of the applicable payment amount and the number of individuals employed by the employer as full-time employees during such month.

**(b) Large employers offering coverage with employees who qualify for premium tax credits or cost-sharing reductions.**--

**(1) In general.**--If—

**(A)** an applicable large employer offers to its full-time employees (and their dependents) the opportunity to enroll in minimum essential coverage under an eligible employer-sponsored plan (as defined in section 5000A(f)(2)) for any month, and

**(B)** 1 or more full-time employees of the applicable large employer has been certified to the employer under section 1411 of the Patient Protection and Affordable Care Act as having enrolled for such month in a qualified health plan with respect to which an applicable premium tax credit or

cost-sharing reduction is allowed or paid with respect to the employee,

then there is hereby imposed on the employer an assessable payment equal to the product of the number of full-time employees of the applicable large employer described in subparagraph (B) for such month and an amount equal to $\frac{1}{12}$ of $3,000.

**(2) Overall limitation.--**The aggregate amount of tax determined under paragraph (1) with respect to all employees of an applicable large employer for any month shall not exceed the product of the applicable payment amount and the number of individuals employed by the employer as full-time employees during such month.

**(c) Definitions and special rules.--**For purposes of this section—

**(1) Applicable payment amount.--**The term "applicable payment amount" means, with respect to any month, $\frac{1}{12}$ of $2,000.

**(2) Applicable large employer.--**

**(A) In general.--**The term "applicable large employer" means, with respect to a calendar year, an employer who employed an average of at least 50 full-time employees on business days during the preceding calendar year.

**(B) Exemption for certain employers.--**

**(i) In general.--**An employer shall not be considered to employ more than 50 full-time employees if—

**(I)** the employer's workforce exceeds 50 full-time employees for 120 days or fewer during the calendar year, and

**(II)** the employees in excess of 50 employed during such 120-day period were seasonal workers.

**(ii) Definition of seasonal workers.--**The term "seasonal worker" means a worker who performs labor or services on a seasonal basis as defined by the Secretary of Labor, including workers covered by section 500.20(s)(1) of title 29, Code of Federal Regulations and retail workers employed exclusively during holiday seasons.

**(C) Rules for determining employer size.--**For purposes of this paragraph--

**(i) Application of aggregation rule for employers.--**All persons treated as a single employer under subsection (b), (c), (m), or (o) of section 414 of the Internal Revenue Code of 1986 shall be treated as 1 employer.

**(ii) Employers not in existence in preceding year.--**In the case of an employer which was not in existence throughout the preceding calendar year, the determination of whether such employer is an applicable large employer shall be based on the average number of employees that it is reasonably expected such employer will employ on business days in the current calendar year.

**(iii) Predecessors.--**Any reference in this subsection to an employer shall include a reference to any predecessor of such employer.

**(D) Application of employer size to assessable penalties.--**

**(i) In general.--**The number of individuals employed by an applicable large employer as full-time employees during any month shall be reduced by 30 solely for purposes of calculating—

**(I)** the assessable payment under subsection (a), or

**(II)** the overall limitation under subsection (b)(2).

**(ii) Aggregation.--**In the case of persons treated as 1 employer under subparagraph (C)(i), only 1 reduction under subclause (I) or (II) shall be allowed with respect to such persons and such reduction shall be allocated among such persons ratably on the basis of the number of full-time employees employed by each such person.

**(E) Full-time equivalents treated as full-time employees.--**Solely for purposes of determining whether an employer is an applicable large employer under this paragraph, an employer shall, in addition to the number of full-time employees for any month otherwise determined, include for such month a number of full-time employees determined by dividing the aggregate number of hours of service of employees who are not full-time employees for the month by 120.

**(F) Exemption for health coverage under TRICARE or the Department of Veterans Affairs.--**Solely for purposes of determining whether an employer is an applicable large employer under this paragraph for any month, an individual shall not be taken into account as an employee for such month if such individual has medical coverage for such month under—

**(i)** chapter 55 of title 10, United States Code, including coverage under the TRICARE program, or

**(ii)** under a health care program under chapter 17 or 18 of title 38, United States Code, as determined by the Secretary of Veterans Affairs, in coordination with the Secretary of Health and Human Services and the Secretary.

**(3) Applicable premium tax credit and cost-sharing reduction.--**The term "applicable premium tax credit and cost-sharing reduction" means—

**(A)** any premium tax credit allowed under section 36B,

**(B)** any cost-sharing reduction under section 1402 of the Patient Protection and Affordable Care Act, and

**(C)** any advance payment of such credit or reduction under section 1412 of such Act.

**(4) Full-time employee.--**

**(A) In general.--**The term "full-time employee" means, with respect to any month, an employee who is employed on average at least 30 hours of service per week.

**(B) Hours of service.--**The Secretary, in consultation with the Secretary of Labor, shall prescribe such regulations, rules, and guidance as may be necessary to determine the hours of service of an employee, including rules for the application of this paragraph to employees who are not compensated on an hourly basis.

**(5) Inflation adjustment.--**

**(A) In general.--**In the case of any calendar year after 2014, each of the dollar amounts in subsection (b) and paragraph (1) shall be increased by an amount equal to the product of—

      **(i)** such dollar amount, and

      **(ii)** the premium adjustment percentage (as defined in section 1302(c)(4) of the Patient Protection and Affordable Care Act) for the calendar year.

    **(B) Rounding.--**If the amount of any increase under subparagraph (A) is not a multiple of $10, such increase shall be rounded to the next lowest multiple of $10.

**(6) Other definitions.--**Any term used in this section which is also used in the Patient Protection and Affordable Care Act shall have the same meaning as when used in such Act.

**(7) Tax nondeductible.--**For denial of deduction for the tax imposed by this section, see section 275(a)(6).

**(d) Administration and procedure.--**

**(1) In general.--**Any assessable payment provided by this section shall be paid upon notice and demand by the Secretary, and shall be assessed and collected in the same manner as an assessable penalty under subchapter B of chapter 68.

**(2) Time for payment.--**The Secretary may provide for the payment of any assessable payment provided by this section on an annual, monthly, or other periodic basis as the Secretary may prescribe.

**(3) Coordination with credits, etc.--**The Secretary shall prescribe rules, regulations, or guidance for the repayment of any assessable payment (including interest) if such payment is based on the allowance or payment of an applicable premium tax credit or cost-sharing reduction with respect to an employee, such allowance or payment is subsequently disallowed, and the assessable payment would not have been required to be made but for such allowance or payment.

**(4) Time for response.--**The Secretary shall allow an applicable large employer at least 90 days from the date of the first letter which informs the employer of a proposed assessment of the employer shared responsibility payment under this section to respond to the proposed assessment before taking any further action with respect to such proposed assessment.

## 26 U.S.C. §6103—Confidentiality and disclosure of returns and return information

**(a) General rule.—**Returns and return information shall be confidential, and except as authorized by this title—

**(1)** no officer or employee of the United States,

**(2)** no officer or employee of any State, any local law enforcement agency receiving information under subsection (i)(1)(C) or (7)(A), any local child support enforcement agency, or any local agency administering a program listed in subsection (l)(7)(D) who has or had access to returns or return information under this section or section 6104(c), and

**(3)** no other person (or officer or employee thereof) who has or had access to returns or return information under subsection (c), subsection (e)(1)(D)(iii), paragraph (10), (13), (14), or (15) of subsection (k), paragraph (6), (10), (12), (13) (other than subparagraphs (D)(v) and (D)(vi) thereof), (16), (19), (20), or (21) of subsection (l), paragraph (2) or (4)(B) of subsection (m), or subsection (n),

shall disclose any return or return information obtained by him in any manner in connection with his service as such an officer or an employee or otherwise or under the provisions of this section. For purposes of this subsection, the term "officer or employee" includes a former officer or employee.

**(b) Definitions.--**For purposes of this section—

**(1) Return.--**The term "return" means any tax or information return, declaration of estimated tax, or claim for refund required by, or provided for or permitted under, the provisions of this title which is filed with the Secretary by, on behalf of, or with respect to any person, and any amendment or supplement thereto, including supporting schedules, attachments, or lists which are supplemental to, or part of, the return so filed.

**(2) Return information.--**The term "return information" means--

> **(A)** a taxpayer's identity, the nature, source, or amount of his income, payments, receipts, deductions, exemptions, credits, assets, liabilities, net worth, tax liability, tax withheld, deficiencies, overassessment, or tax payments, whether the taxpayer's return was, is being, or will be examined or subject to other investigation or processing, or any other data, received by, recorded by, prepared by, furnished to, or collected by the Secretary with respect to a return or with respect to the determination of the existence, or possible existence, of liability (or the amount thereof) of any person under this title for any tax, penalty, interest, fine, forfeiture, or other imposition or offense,

…

**(*l*)  Disclosure of returns and return information for purposes other than tax administration.--**
…

> **(21)  Disclosure of return information to carry out eligibility requirements for certain programs.--**
>
>> **(A)  In general.--**The Secretary, upon written request from the Secretary of Health and Human Services, shall disclose to officers, employees, and contractors of the Department of Health and Human Services return information of any taxpayer whose income is relevant in determining any premium tax credit under section 36B or any cost-sharing reduction under section 1402 of the Patient Protection and Affordable Care Act or eligibility for participation in a State medicaid program under title XIX of the Social Security Act, a State's children's health insurance program under title XXI of the Social Security Act, or a basic health program under section 1331 of Patient Protection and

Affordable Care Act. Such return information shall be limited to—

>  **(i)** taxpayer identity information with respect to such taxpayer,
>
>  **(ii)** the filing status of such taxpayer,
>
>  **(iii)** the number of individuals for whom a deduction is allowed under section 151 with respect to the taxpayer (including the taxpayer and the taxpayer's spouse),
>
>  **(iv)** the modified adjusted gross income (as defined in section 36B) of such taxpayer and each of the other individuals included under clause (iii) who are required to file a return of tax imposed by chapter 1 for the taxable year,
>
>  **(v)** such other information as is prescribed by the Secretary by regulation as might indicate whether the taxpayer is eligible for such credit or reduction (and the amount thereof), and
>
>  **(vi)** the taxable year with respect to which the preceding information relates or, if applicable, the fact that such information is not available.

**(B) Information to exchange and State agencies.--**The Secretary of Health and Human Services may disclose to an Exchange established under the Patient Protection and Affordable Care Act or its contractors, or to a State agency administering a State program described in subparagraph (A) or its contractors, any inconsistency between the information provided by the Exchange or State agency to the Secretary and the information provided to the Secretary under subparagraph (A).

**(C)  Restriction on use of disclosed information.--**
Return information disclosed under subparagraph (A) or (B)
may be used by officers, employees, and contractors of
the Department of Health and Human Services, an
Exchange, or a State agency only for the purposes of, and to
the extent necessary in—

    **(i)**  establishing eligibility for participation in the
Exchange, and verifying the appropriate amount of,
any credit or reduction described in subparagraph (A),

    **(ii)**  determining eligibility for participation in
the State programs described in subparagraph (A).

## 26 U.S.C. §7421—Prohibition of suits to restrain assessment or collection

**(a) Tax**

Except as provided in sections 6015(e), 6212(a) and (c), 6213(a), 6232(c), 6330(e)(1), 6331(i), 6672(c), 6694(c), 7426(a) and (b)(1), 7429(b), and 7436, no suit for the purpose of restraining the assessment or collection of any tax shall be maintained in any court by any person, whether or not such person is the person against whom such tax was assessed.

. . .

## 28 U.S.C. §2201—Creation of remedy

**(a)** In a case of actual controversy within its jurisdiction, except with respect to Federal taxes other than actions brought under section 7428 of the Internal Revenue Code of 1986, a proceeding under section 505 or 1146 of title 11, or in any civil action involving an antidumping or countervailing duty proceeding regarding a class or kind of merchandise of a free trade area country (as defined in section 516A(f)(9) of the Tariff Act of 1930), as determined by the administering authority, any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought. Any such declaration shall have the force and effect of a final judgment or decree and shall be reviewable as such.

. . .

**42 U.S.C. §18081—Procedures for determining eligibility for Exchange participation, premium tax credits and reduced cost-sharing, and individual responsibility exemptions**

**(a) Establishment of program**

The Secretary shall establish a program meeting the requirements of this section for determining—

**(1)** whether an individual who is to be covered in the individual market by a qualified health plan offered through an Exchange, or who is claiming a premium tax credit or reduced cost-sharing, meets the requirements of sections 18032(f)(3), 18071(e), and 18082(d) of this title and section 36B(e) of Title 26 that the individual be a citizen or national of the United States or an alien lawfully present in the United States;

**(2)** in the case of an individual claiming a premium tax credit or reduced cost-sharing under section 36B of Title 26 or section 18071 of this title—

   **(A)** whether the individual meets the income and coverage requirements of such sections; and

   **(B)** the amount of the tax credit or reduced cost-sharing;

**(3)** whether an individual's coverage under an employer-sponsored health benefits plan is treated as unaffordable under sections 36B(c)(2)(C) and 5000A(e)(2) of Title 26; and

**(4)** whether to grant a certification under section 18031(d)(4)(H) of this title attesting that, for purposes of the individual responsibility requirement under section 5000A of Title 26, an individual is entitled to an exemption from either the individual responsibility requirement or the penalty imposed by such section.

**(b) Information required to be provided by applicants**

**(1) In general**

An applicant for enrollment in a qualified health plan offered through an Exchange in the individual market shall provide—

**(A)** the name, address, and date of birth of each individual who is to be covered by the plan (in this subsection referred to as an "enrollee"); and

**(B)** the information required by any of the following paragraphs that is applicable to an enrollee.

**(2) Citizenship or immigration status**

The following information shall be provided with respect to every enrollee:

**(A)** In the case of an enrollee whose eligibility is based on an attestation of citizenship of the enrollee, the enrollee's social security number.

**(B)** In the case of an individual whose eligibility is based on an attestation of the enrollee's immigration status, the enrollee's social security number (if applicable) and such identifying information with respect to the enrollee's immigration status as the Secretary, after consultation with the Secretary of Homeland Security, determines appropriate.

**(3) Eligibility and amount of tax credit or reduced cost-sharing**

In the case of an enrollee with respect to whom a premium tax credit or reduced cost-sharing under section 36B of Title 26 or section 18071 of this title is being claimed, the following information:

**(A)  Information regarding income and family size**

The information described in section 6103(l)(21) of Title 26 for the taxable year ending with or within the second calendar year preceding the calendar year in which the plan year begins.

**(B)  Certain individual health insurance policies obtained through small employers**

The amount of the enrollee's permitted benefit (as defined in section 9831(d)(3)(C) of Title 26) under a qualified small employer health reimbursement arrangement (as defined in section 9831(d)(2) of such title).

**(C)  Changes in circumstances**

The information described in section 18082(b)(2) of this title, including information with respect to individuals who were not required to file an income tax return for the taxable year described in subparagraph (A) or individuals who experienced changes in marital status or family size or significant reductions in income.

**(4)  Employer-sponsored coverage**

In the case of an enrollee with respect to whom eligibility for a premium tax credit under section 36B of Title 26 or cost-sharing reduction under section 18071 of this title is being established on the basis that the enrollee's (or related individual's) employer is not treated under section 36B(c)(2)(C) of Title 26 as providing minimum essential coverage or affordable minimum essential coverage, the following information:

**(A)** The name, address, and employer identification number (if available) of the employer.

**(B)** Whether the enrollee or individual is a full-time employee and whether the employer provides such minimum essential coverage.

**(C)** If the employer provides such minimum essential coverage, the lowest cost option for the enrollee's or individual's enrollment status and the enrollee's or individual's required contribution (within the meaning of section 5000A(e)(1)(B) of Title 26) under the employer-sponsored plan.

**(D)** If an enrollee claims an employer's minimum essential coverage is unaffordable, the information described in paragraph (3).

If an enrollee changes employment or obtains additional employment while enrolled in a qualified health plan for which such credit or reduction is allowed, the enrollee shall notify the Exchange of such change or additional employment and provide the information described in this paragraph with respect to the new employer.

## (5) Exemptions from individual responsibility requirements

In the case of an individual who is seeking an exemption certificate under section 18031(d)(4)(H) of this title from any requirement or penalty imposed by section 5000A of Title 26, the following information:

**(A)** In the case of an individual seeking exemption based on the individual's status as a member of an exempt religious sect or division, as a member of a health care sharing ministry, as an Indian, or as an individual eligible for a

hardship exemption, such information as the Secretary shall prescribe.

**(B)** In the case of an individual seeking exemption based on the lack of affordable coverage or the individual's status as a taxpayer with household income less than 100 percent of the poverty line, the information described in paragraphs (3) and (4), as applicable.

## (c) Verification of information contained in records of specific Federal officials

### (1) Information transferred to Secretary

An Exchange shall submit the information provided by an applicant under subsection (b) to the Secretary for verification in accordance with the requirements of this subsection and subsection (d).

### (2) Citizenship or immigration status

#### (A) Commissioner of Social Security

The Secretary shall submit to the Commissioner of Social Security the following information for a determination as to whether the information provided is consistent with the information in the records of the Commissioner:

**(i)** The name, date of birth, and social security number of each individual for whom such information was provided under subsection (b)(2).

**(ii)** The attestation of an individual that the individual is a citizen.

**(B) Secretary of Homeland Security**

**(i) In general**

In the case of an individual—

> **(I)** who attests that the individual is an alien lawfully present in the United States; or

> **(II)** who attests that the individual is a citizen but with respect to whom the Commissioner of Social Security has notified the Secretary under subsection (e)(3) that the attestation is inconsistent with information in the records maintained by the Commissioner;

> the Secretary shall submit to the Secretary of Homeland Security the information described in clause (ii) for a determination as to whether the information provided is consistent with the information in the records of the Secretary of Homeland Security.

**(ii) Information**

The information described in clause (ii) is the following:

> **(I)** The name, date of birth, and any identifying information with respect to the individual's immigration status provided under subsection (b)(2).

> **(II)** The attestation that the individual is an alien lawfully present in the United States or in the case of an individual described in clause (i)(II), the attestation that the individual is a citizen.

**(3)  Eligibility for tax credit and cost-sharing reduction**

The Secretary shall submit the information described in subsection (b)(3)(A) provided under paragraph (3), (4), or (5) of subsection (b) to the Secretary of the Treasury for verification of household income and family size for purposes of eligibility.

**(4)  Methods**

**(A)  In general**

The Secretary, in consultation with the Secretary of the Treasury, the Secretary of Homeland Security, and the Commissioner of Social Security, shall provide that verifications and determinations under this subsection shall be done—

**(i)**  through use of an on-line system or otherwise for the electronic submission of, and response to, the information submitted under this subsection with respect to an applicant; or

**(ii)**  by determining the consistency of the information submitted with the information maintained in the records of the Secretary of the Treasury, the Secretary of Homeland Security, or the Commissioner of Social Security through such other method as is approved by the Secretary.

**(B)  Flexibility**

The Secretary may modify the methods used under the program established by this section for the Exchange[2] and verification of information if the Secretary determines such modifications would reduce the administrative costs and burdens on the applicant, including allowing an applicant to request the Secretary of the Treasury to provide the information described in paragraph (3) directly to the

Exchange or to the Secretary. The Secretary shall not make any such modification unless the Secretary determines that any applicable requirements under this section and section 6103 of Title 26 with respect to the confidentiality, disclosure, maintenance, or use of information will be met.

## (d) Verification by Secretary

In the case of information provided under subsection (b) that is not required under subsection (c) to be submitted to another person for verification, the Secretary shall verify the accuracy of such information in such manner as the Secretary determines appropriate, including delegating responsibility for verification to the Exchange.

## (e) Actions relating to verification

### (1) In general

Each person to whom the Secretary provided information under subsection (c) shall report to the Secretary under the method established under subsection (c)(4) the results of its verification and the Secretary shall notify the Exchange of such results. Each person to whom the Secretary provided information under subsection (d) shall report to the Secretary in such manner as the Secretary determines appropriate.

### (2) Verification

#### (A) Eligibility for enrollment and premium tax credits and cost-sharing reductions

If information provided by an applicant under paragraphs (1), (2), (3), and (4) of subsection (b) is verified under subsections (c) and (d)—

(i) the individual's eligibility to enroll through the Exchange and to apply for premium tax credits and cost-sharing reductions shall be satisfied; and

**(ii)** the Secretary shall, if applicable, notify the Secretary of the Treasury under section 18082(c) of this title of the amount of any advance payment to be made.

### (B)  Exemption from individual responsibility

If information provided by an applicant under subsection (b)(5) is verified under subsections (c) and (d), the Secretary shall issue the certification of exemption described in section 18031(d)(4)(H) of this title.

### (3)  Inconsistencies involving attestation of citizenship or lawful presence

If the information provided by any applicant under subsection (b)(2) is inconsistent with information in the records maintained by the Commissioner of Social Security or Secretary of Homeland Security, whichever is applicable, the applicant's eligibility will be determined in the same manner as an individual's eligibility under the medicaid program is determined under section 1396a(ee) of this title (as in effect on January 1, 2010).

### (4)  Inconsistencies involving other information

#### (A)  In general

If the information provided by an applicant under subsection (b) (other than subsection (b)(2)) is inconsistent with information in the records maintained by persons under subsection (c) or is not verified under subsection (d), the Secretary shall notify the Exchange and the Exchange shall take the following actions:

##### (i)  Reasonable effort

The Exchange shall make a reasonable effort to identify and address the causes of such inconsistency, including through typographical or other clerical

errors, by contacting the applicant to confirm the accuracy of the information, and by taking such additional actions as the Secretary, through regulation or other guidance, may identify.

### (ii) Notice and opportunity to correct

In the case the inconsistency or inability to verify is not resolved under subparagraph (A), the Exchange shall—

**(I)** notify the applicant of such fact;

**(II)** provide the applicant an opportunity to either present satisfactory documentary evidence or resolve the inconsistency with the person verifying the information under subsection (c) or (d) during the 90-day period beginning the date on which the notice required under subclause (I) is sent to the applicant.

The Secretary may extend the 90-day period under subclause (II) for enrollments occurring during 2014.

### (B) Specific actions not involving citizenship or lawful presence

### (i) In general

Except as provided in paragraph (3), the Exchange shall, during any period before the close of the period under subparagraph (A)(ii)(II), make any determination under paragraphs (2), (3), and (4) of subsection (a) on the basis of the information contained on the application.

### (ii) Eligibility or amount of credit or reduction

If an inconsistency involving the eligibility for, or amount of, any premium tax credit or cost-sharing reduction is unresolved under this subsection as of the close of the period under subparagraph (A)(ii)(II), the Exchange shall notify the applicant of the amount (if any) of the credit or reduction that is determined on the basis of the records maintained by persons under subsection (c).

### (iii) Employer affordability

If the Secretary notifies an Exchange that an enrollee is eligible for a premium tax credit under section 36B of Title 26 or cost-sharing reduction under section 18071 of this title because the enrollee's (or related individual's) employer does not provide minimum essential coverage through an employer-sponsored plan or that the employer does provide that coverage but it is not affordable coverage, the Exchange shall notify the employer of such fact and that the employer may be liable for the payment assessed under section 4980H of Title 26.

### (iv) Exemption

In any case where the inconsistency involving, or inability to verify, information provided under subsection (b)(5) is not resolved as of the close of the period under subparagraph (A)(ii)(II), the Exchange shall notify an applicant that no certification of exemption from any requirement or payment under section 5000A of such title will be issued.

### (C) Appeals process

The Exchange shall also notify each person receiving notice under this paragraph of the appeals processes established under subsection (f).

## (f) Appeals and redeterminations

### (1) In general

The Secretary, in consultation with the Secretary of the Treasury, the Secretary of Homeland Security, and the Commissioner of Social Security, shall establish procedures by which the Secretary or one of such other Federal officers—

**(A)** hears and makes decisions with respect to appeals of any determination under subsection (e); and

**(B)** redetermines eligibility on a periodic basis in appropriate circumstances.

### (2) Employer liability

### (A) In general

The Secretary shall establish a separate appeals process for employers who are notified under subsection (e)(4)(C) that the employer may be liable for a tax imposed by section 4980H of Title 26 with respect to an employee because of a determination that the employer does not provide minimum essential coverage through an employer-sponsored plan or that the employer does provide that coverage but it is not affordable coverage with respect to an employee. Such process shall provide an employer the opportunity to—

**(i)** present information to the Exchange for review of the determination either by the Exchange or the person making the determination, including evidence

of the employer-sponsored plan and employer contributions to the plan; and

**(ii)** have access to the data used to make the determination to the extent allowable by law.

Such process shall be in addition to any rights of appeal the employer may have under subtitle F of such title.

## (B) Confidentiality

Notwithstanding any provision of this title (or the amendments made by this title) or section 6103 of Title 26, an employer shall not be entitled to any taxpayer return information with respect to an employee for purposes of determining whether the employer is subject to the penalty under section 4980H of Title 26 with respect to the employee, except that—

**(i)** the employer may be notified as to the name of an employee and whether or not the employee's income is above or below the threshold by which the affordability of an employer's health insurance coverage is measured; and

**(ii)** this subparagraph shall not apply to an employee who provides a waiver (at such time and in such manner as the Secretary may prescribe) authorizing an employer to have access to the employee's taxpayer return information.

...

## 42 U.S.C. §18082—Advance determination and payment of premium tax credits and cost-sharing reductions

### (a)  In general

The Secretary, in consultation with the Secretary of the Treasury, shall establish a program under which—

> **(1)**  upon request of an Exchange, advance determinations are made under section 18081 of this title with respect to the income eligibility of individuals enrolling in a qualified health plan in the individual market through the Exchange for the premium tax credit allowable under section 36B of Title 26 and the cost-sharing reductions under section 18071 of this title;

...

> **(3)**  the Secretary of the Treasury makes advance payments of such credit or reductions to the issuers of the qualified health plans in order to reduce the premiums payable by individuals eligible for such credit.

### (b)  Advance determinations

#### (1)  In general

The Secretary shall provide under the program established under subsection (a) that advance determination of eligibility with respect to any individual shall be made—

> **(A)**  during the annual open enrollment period applicable to the individual (or such other enrollment period as may be specified by the Secretary); and

> **(B)**  on the basis of the individual's household income for the most recent taxable year for which the Secretary, after consultation with the Secretary of the Treasury, determines information is available.

…

## (c)  Payment of premium tax credits and cost-sharing reductions

### (1)  In general

The Secretary shall notify the Secretary of the Treasury and the Exchange through which the individual is enrolling of the advance determination under section 18081 of this title.

### (2)  Premium tax credit

#### (A)  In general

The Secretary of the Treasury shall make the advance payment under this section of any premium tax credit allowed under section 36B of Title 26 to the issuer of a qualified health plan on a monthly basis (or such other periodic basis as the Secretary may provide).

#### (B)  Issuer responsibilities

An issuer of a qualified health plan receiving an advance payment with respect to an individual enrolled in the plan shall—

(i)  reduce the premium charged the insured for any period by the amount of the advance payment for the period;

(ii)  notify the Exchange and the Secretary of such reduction;

(iii)  include with each billing statement the amount by which the premium for the plan has been reduced by reason of the advance payment; and

**(iv)** in the case of any nonpayment of premiums by the insured—

**(I)** notify the Secretary of such nonpayment; and

**(II)** allow a 3-month grace period for nonpayment of premiums before discontinuing coverage.

**(3) Cost-sharing reductions**

The Secretary shall also notify the Secretary of the Treasury and the Exchange under paragraph (1) if an advance payment of the cost-sharing reductions under section 18071 of this title is to be made to the issuer of any qualified health plan with respect to any individual enrolled in the plan. The Secretary of the Treasury shall make such advance payment at such time and in such amount as the Secretary specifies in the notice.

...

**45 C.F.R. §155.310—Eligibility process**

…

(i)  Certification program for employers. As part of its determination of whether an employer has a liability under section 4980H of the Code, the Internal Revenue Service will adopt methods to certify to an employer that one or more employees has enrolled for one or more months during a year in a QHP for which a premium tax credit or cost-sharing reduction is allowed or paid.