# 25-10773

IN THE UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT

FAULK COMPANY, INC.,

Plaintiff-Appellee

v.

ROBERT F. KENNEDY, JR., in his official capacity as Secretary
of Health and Human Services, U.S. DEPARTMENT OF
HEALTH AND HUMAN SERVICES and its subcomponent
CENTERS FOR MEDICARE & MEDICAID SERVICES,
MEHMET OZ, in his official capacity as Administrator of the
Centers for Medicare & Medicaid Services, and
UNITED STATES OF AMERICA,

Defendants-Appellants

ON APPEAL FROM THE JUDGMENT OF THE UNITED STATES
DISTRICT COURT FOR THE NORTHERN DISTRICT OF TEXAS

REPLY BRIEF FOR THE APPELLANTS

BRETT A. SHUMATE
  *Assistant Attorney General*
JOSHUA WU
  *Deputy Assistant Attorney General*

ELLEN PAGE DELSOLE          (202) 514-8128
GEOFFREY J. KLIMAS          (202) 307-6346
  *Attorneys, Tax Litigation Branch*
  *Civil Division, U.S. Department of Justice*
  *Post Office Box 502, Washington, D.C. 20044*

# TABLE OF CONTENTS

**Page**

Table of contents.............................................................................i

Table of authorities .......................................................................ii

Glossary ........................................................................................v

Introduction ................................................................................. 1

Argument .....................................................................................5

    I.    The District Court erred in holding that Faulk was entitled to a refund of the employer shared responsibility payment assessed against it ...........................5

    II.   The District Court erred in declaring the HHS regulation invalid and setting it aside ..................................26

Conclusion..................................................................................35

Certificate of compliance .............................................................36

# TABLE OF AUTHORITIES

**Cases:** **Page(s)**

*Bassel v. Durand-Day ("In re Durand-Day"),*
  134 F.4th 846 (5th Cir. 2025)...................................................17

*Centro de Trabajadores Unidos v. Bessent,*
  167 F.4th 1218 (D.C. Cir. 2026)................................................26

*CIC Servs., LLC v. Internal Revenue Serv.,*
  593 U.S. 209 (2021) ................................................................30

*E.E.O.C. v. Louisville & Nashville R.R. Co.,*
  505 F.2d 610 (5th Cir. 1974) ...................................................13

*Encino Motorcars, LLC v. Navarro,*
  584 U.S. 79 (2018) ..................................................................32

*Franklin v. United States,*
  49 F.4th 429 (5th Cir. 2022).....................................................34

*Hamdan v. Rumsfeld,*
  548 U.S. 557 (2006) .................................................................26

*Hancock Cty. Land Acquisitions, LLC v. United States,*
  2022 WL 3449525 (11th Cir. 2022) (per curiam) ........................34

*Jama v. Immigration and Customs Enforcement,*
  543 U.S. 335 (2005) .............................................................9, 32

*Kucana v. Holder,*
  558 U.S. 233 (2010) .................................................................17

*Landry's, Inc. v. Insur. Co. of the State of Pa.,*
  4 F.4th 366 (5th Cir. 2021)........................................................8

*Loper Bright Enters. v. Raimondo,*
  603 U.S. 369 (2024) .................................................................23

*Nat'l Ass'n of Mfrs. v. Dep't of Def.,*
  583 U.S. 109 (2018) .............................................................16-17

*Rivero v. Fid. Invests., Inc.,*
  1 F.4th 340 (5th Cir. 2021), *cert. denied,*
  142 S. Ct. 1670 (2022) ......................................................27-31, 33

*South Carolina v. Regan,*
  465 U.S. 367 (1984) .................................................................22

*St. Louis Fuel and Supply Co., Inc. v. F.E.R.C.,*
  890 F.2d 446 (D.C. Cir. 1989)....................................................17

**Cases (cont'd):**                                                        **Page(s)**

*Standard Ins. v. Internal Revenue Serv.,*
   162 F.4th 1035 (10th Cir. 2025) .................................................. 34
*Supreme Linen Servs., Inc. v. United States,*
   2026 U.S. Dist. LEXIS 40155
   (S.D. Fla. Feb. 25, 2026) ......................... 2-3, 7-8, 10-12, 14-15, 18
*White v. Estelle,*
   720 F.2d 415 (5th Cir. 1983) ................................................ 30-31

**Statutes:**

Internal Revenue Code (26 U.S.C.):

§ 25A(a) ............................................................................... 11
§ 36B.............................................................................. 12, 29
§ 36B(a) ......................................................................... 11, 26
§ 36B(c)(1)(A) ...................................................................... 11
§ 36B(c)(1)(D) ..................................................................... 11
§ 36B(f) ............................................................................... 10
§ 4980H ....................................... 1-10, 12-18, 20-26, 29
§ 4980H(a).......................................................................... 26
§ 4980H(a)(2) ...................................... 3, 6, 9-10, 12-13 19
§ 4980H(b)(1) ..................................................................... 26
§ 4980H(b)(1)(B) ....................................................... 10, 12-13
§ 5000A(b)(1)...................................................................... 26
§ 6103 ............................................................................ 20-21
§ 7421(a)........................................................... 28, 30-31, 33-34
§ 7422(a)............................................................................. 33
§ 7801 .................................................................................. 7
§ 7801(a)(1) ............................................................... 2, 6, 25
§ 7803(a)(2)(A) ................................................................... 26

28 U.S.C.:

§ 1341 ................................................................................. 32
§ 2201(a).............................................................. 1, 4, 27-28, 32

**Statutes (cont'd):** **Page(s)**

42 U.S.C.:

§ 18081(b)(3)(A) ................................................................. 21
§ 18081(c)(4)(B) ................................................................. 21
§ 18081(e)(4)(B)(iii) ................................................ 10, 12-13
§ 18081(f)(1)(A) ........................................................... 12-13
§ 18081(f)(2)(B) ................................................................. 21
§ 18081(i)(1)(B) ................................................................. 22
§ 18082(a)(2)(B) ................................................................. 14
§ 18082(b)(1)(A) ................................................................. 13
§ 18082(b)(1)(B) ................................................................. 11

Continuing Appropriations Act, 2014, P.L. 113-46,
§1001, 127 Stat. 557 (Oct. 17, 2013) ................................. 22

**Miscellaneous:**

26 C.F.R. §20.6325-1 ......................................................... 27

45 C.F.R. §155.310(i) ............................... 4, 23, 25-26, 29

78 Fed. Reg. 4594-01 (Jan. 22, 2013) ............................... 24

78 Fed. Reg. 42160-01 (July 15, 2013) ............................. 24

Antonin Scalia & Bryan A. Garner, *Reading Law: The
Interpretation of Legal Texts* (2012) ........................... 19, 32

https://www.irs.gov/pub/irs-pdf/f8962.pdf ......................... 12

S. Rep. No. 74-1240, pt. 1 (1935) ...................................... 33

# GLOSSARY

| Abbreviation | Definition |
| --- | --- |
| ACA | portions of the Affordable Care Act codified in Title 42 |
| AIA | Anti-Injunction Act, I.R.C. §7421(a) |
| APTC | advance payment of the premium tax credit |
| Br. | Faulk's response brief |
| ESRP | employer shared responsibility payment |
| Faulk | Faulk Company, Inc. |
| the Government | United States of America, HHS and its subcomponent Centers for Medicare & Medicaid Services, the Secretary of HHS, and the Administrator of Centers for Medicare & Medicaid Services |
| Gov't Br. | Government's opening brief |
| HHS | U.S. Department of Health and Human Services |
| I.R.C. | Internal Revenue Code (26 U.S.C.) |
| IRS | Internal Revenue Service |
| tax exception | tax exception to the Declaratory Judgment Act, 28 U.S.C. §2201(a) |

1246802468

# INTRODUCTION

Tellingly, Faulk Company, Inc. ("Faulk") buries the dispositive statutory interpretation question presented at the end of its response brief while it primarily asserts that this Court should disregard its own Declaratory Judgment Act precedent. But Faulk cannot escape the conclusion that the Internal Revenue Service ("IRS") could make the certification contemplated by Internal Revenue Code ("I.R.C.") (26 U.S.C.) §4980H. This reply addresses only Faulk's points that we believe warrant a further response. With respect to those points not discussed herein, we rely on our opening brief.

I.    The primary issue in this case is whether Faulk is entitled to a refund of the employer shared responsibility payment ("ESRP") assessed against it for 2019 in connection with the Affordable Care Act's employer mandate. Resolution of that issue turns on which agency must make the certification contemplated by I.R.C. §4980H, which is a prerequisite to the imposition of ESRP liability. The parties agree that the ESRP is an excise tax imposed by Title 26; therefore, the certification "shall be performed by or under the supervision of the Secretary of the Treasury" unless "otherwise expressly provided by

law." I.R.C. §7801(a)(1). And because I.R.C. §4980H is silent as to which agency must make the certification, the Internal Revenue Service ("IRS"), as an arm of the Treasury Department, was the appropriate agency. (Gov't Br. 26-29.) Another court recently reached this same conclusion. *Supreme Linen Servs., Inc. v. United States*, 2026 U.S. Dist. LEXIS 40155, at *11-*23 (S.D. Fla. Feb. 25, 2026) (rejecting "the reasoning of *Faulk Company*" and declining to adopt a reading of the relevant statutes that would "run[ ] counter to the plain language").

The District Court nevertheless held that only the U.S. Department of Health and Human Services ("HHS") can make the required certification. (Gov't Br. 37-53.) In the court's view, I.R.C. §4980H's cross-reference to ACA §1411 meant that the "certification" contemplated by I.R.C. §4980H was the same as the "notice" contemplated by ACA §1411(e); therefore, HHS, which is charged with administering ACA §1411, was responsible for the certification/notice. (ROA.635.)

That was error. The District Court's interpretation improperly conflated I.R.C. §4980H certifications and ACA §1411(e) notices, which Congress described using different words and made different in

substance. (Gov't Br. 42-53.) Notably, ACA §1411(e) notices are issued in connection with HHS's advance determination that an employee is *eligible* for an advance payment of the premium tax credit ("APTC"), whereas I.R.C. §4980H certifications are made in connection with the IRS's later-in-time *allowance or payment* of the premium tax credit. (Gov't Br. 7-11, 46); *Supreme Linen*, 2026 U.S. Dist. LEXIS, at \*26-\*27. With this distinction in place, the Government argued that only the IRS has both the legal authority and practical ability to make an I.R.C. §4980H certification. (Gov't Br. 28-34.)

On appeal, Faulk does not try to defend the District Court's conclusion that I.R.C. §4980H certifications and ACA §1411(e) notices are the same. Instead, it contends that, as used in I.R.C. §4980H, "certified to the employer under section 1411" means a certification that the notice-and-appeal process contemplated by ACA §1411(e) & (f) is complete. (Br. 40-41.) But this interpretation is completely untethered from *what* must be certified under I.R.C. §4980H, namely that at least one full-time employee has "enrolled for such month in a qualified health plan with respect to which an applicable premium tax credit … *is allowed or paid*." I.R.C. §4980H(a)(2) (emphasis added); *see also id.*

§4980H(b)(1)(B). And HHS has no information about whether premium tax credits are allowed or paid, much less whether they are allowed or paid for a particular month. (Gov't Br. 30-34.) Nor can HHS glean this information from the notice-and-appeal process contemplated by ACA §1411(e) & (f), which considers only whether employees are *eligible* for advance payment of the premium tax credit. Consequently, Faulk's newly minted interpretation of I.R.C. §4980H fails just as surely as the District Court's.

II.     Also at issue is the validity of a regulation—45 C.F.R. §155.310(i)—which supports the Government's position that the IRS has authority to make the certification contemplated by I.R.C. §4980H. Because the regulation embodies the best reading of the statute, the District Court erred by declaring it invalid and setting it aside. Making matters worse, the tax exception to the Declaratory Judgment Act, 28 U.S.C. §2201(a), deprived the court of jurisdiction to award such relief in the first place. (Gov't Br. 60-68.) On appeal, Faulk proposes a narrow interpretation of the tax exception, but its proffered interpretation runs roughshod over both the provision's plain language and controlling precedent construing that language. (Br. 8-23.) And

even if this Court were to adopt Faulk's narrow reading of the tax exception, Faulk's claim seeking declaratory relief would still fall squarely within it.

## ARGUMENT

### I.

**The District Court erred in holding that Faulk was entitled to a refund of the employer shared responsibility payment assessed against it**

1. The process of imposing ESRP liability involves three stages. First, HHS makes an advance determination concerning individuals' eligibility for a premium tax credit when they purchase health insurance coverage through a Health Benefit Exchange and apply for financial assistance. Second, individuals claim the premium tax credit on their income tax returns. Third, the IRS assesses ESRPs against applicable large employers after it "has been certified" that the prerequisites to liability are satisfied. (Gov't Br. 6-14.) In particular, I.R.C. §4980H requires that:

> at least one full-time employee of the applicable large employer has been certified to the employer under section 1411 of the Patient Protection and Affordable Care Act as having enrolled for such month in a qualified health plan with respect to which an applicable premium tax credit or cost-sharing reduction is allowed or paid with respect to the employee[.]

I.R.C. §4980H(a)(2); *see also id.* §4980H(b)(1)(B).  At issue here is whether the IRS can make the required certification (as the Government contends) or whether that certification must be made by HHS (as the District Court held).

2.    Congress created a presumption that the administration and enforcement of Title 26 "shall be performed by or under the supervision of the Secretary of the Treasury."  I.R.C. §7801(a)(1).  To overcome that presumption, a law must "expressly provide[ ]" that another agency is responsible.  *Id.*  Because the ESRP is an excise tax imposed by Title 26, its administration and enforcement—including the certification contemplated by I.R.C. §4980H—must be administered and enforced by the Treasury Department unless a law expressly provides otherwise.  No law does so here, as Faulk and the District Court conceded below.  (ROA.172 (certification requirement is phrased "in the passive voice"); ROA.634 ("I.R.C. §4980H is silent as to which agency must provide certification.").)  As the U.S. District Court for the Southern District of Florida recently concluded, in the absence of any such express provision, the authority to make an I.R.C. §4980H certification

"originated—and remained—with the IRS." *Supreme Linen*, 2026 U.S. Dist. LEXIS, at *16.

Here, the District Court and Faulk ignore the impact of I.R.C. §7801. Instead, they focus on I.R.C. §4980H's direction that the required certification be made "under section 1411" of the ACA, which they construe as "by reason of the authority of section 1411" of the ACA. (ROA.634-635; Br. 34-35.) This might be a reasonable construction if ACA §1411 established a relevant certification process. But it does not. Indeed, ACA §1411 does not even mention a certification process connected to the ESRP or the employer mandate. (Gov't Br. 42.) The absence of such a certification process in ACA §1411 exposes the fallacy of the court's construction and should have dissuaded it from adopting that construction.

Instead, the District Court pointed to the notice process established in ACA §1411(e), which requires the Exchanges to notify an employer of (i) an Exchange determination that one of the employer's employees is eligible for a premium tax credit and (ii) the employer's right to an administrative appeal with HHS to dispute this determination. The court concluded that the "notice" contemplated by

ACA §1411(e) is the same as the "certification" contemplated by I.R.C. §4980H. But I.R.C. §4980H and ACA §1411 consistently distinguish between notices and certifications and do not use the terms interchangeably. (Gov't Br. 43-45.) The court thus erred by failing to afford "a variation in meaning" to this "material variation in terms." *Supreme Linen*, 2026 U.S. Dist. LEXIS, at *25-*26 (citation and internal quotations omitted); *accord Landry's, Inc. v. Insur. Co. of the State of Pa.*, 4 F.4th 366, 370 (5th Cir. 2021). The court compounded its error by failing to account for the numerous substantive differences between I.R.C. §4980H certifications and ACA §1411(e) notices. (Gov't Br. 45-48); *see Supreme Linen*, 2026 U.S. Dist. LEXIS, at *26-*30.

3.a. Faulk does not defend the District Court's conclusion that I.R.C. §4980H certifications and ACA §1411(e) notices are the same. Rather, Faulk argues for the first time that the certification contemplated by I.R.C. §4980H should be interpreted as an attestation that the notice-and-appeal process contemplated by ACA §1411(e) & (f) is complete. (Br. 40-41.) This interpretation is riddled with problems. In particular, it improperly adds requirements to the I.R.C. §4980H certification that appear nowhere in the statutory text, and it

improperly attributes numerous requirements to ACA §1411 that appear only in I.R.C. §4980H.

3.b. For starters, the certification contemplated in I.R.C. §4980H addresses whether a full-time employee enrolled in a qualified health plan for which a premium tax credit was allowed or paid. I.R.C. §4980H(a)(2); *see also id.* §4980H(b)(1)(B). Section 4980H does not address whether an employer was notified of anything, much less whether the employer was notified of its right to administratively appeal an Exchange eligibility determination concerning one or more of its employees. Nor does the certification contemplated by I.R.C. §4980H address whether the employer availed itself of the administrative appeal and, if so, whether that appeal is complete. This Court should not adopt a reading of I.R.C. §4980H that "assume[s] … Congress has omitted from its adopted text requirements that it nonetheless intends to apply." *Jama v. Immigration and Customs Enforcement*, 543 U.S. 335, 341 (2005).

3.c. The elements (at least five) that distinguish I.R.C. §4980H certifications from ACA §1411(e) notices likewise distinguish I.R.C. §4980H certifications from ACA §1411(f) appeals. (Gov't Br. 45-48.) As

discussed below, those same elements also fall outside the scope of ACA §1411(f) appeals. It therefore makes little sense to characterize I.R.C. §4980H certifications as attesting to the completion of the ACA §1411(e) & (f) notice-and-appeal process, as Faulk urges.

First, the ACA §1411(e) & (f) notice-and-appeal process addresses an Exchange's advance determination that an employee "*is eligible for* a premium tax credit." 42 U.S.C. §18081(e)(4)(B)(iii) (emphasis added), (f)(1)(A). By contrast, I.R.C. §4980H addresses a different, later-in-time certification that a "premium tax credit … *is allowed or paid* with respect to the employee." I.R.C. §4980H(a)(2), (b)(1)(B) (emphasis added). As the Southern District of Florida court explained, "[t]he difference in this language is plainly obvious as being eligible for something does not mean that one is approved, as the term 'allowed' connotes, and is certainly not the same as being paid." *Supreme Linen*, 2026 U.S. Dist. LEXIS, at *27; *see* I.R.C. §36B(f) (distinguishing between advance payment of the premium tax credit and allowance of that credit). This interpretation is consistent with how the word "allow" is used throughout the Internal Revenue Code—*i.e.*, as an IRS

determination that a taxpayer is entitled to the benefit claimed on his return.[1]

In this vein, there are many instances in which an Exchange initially determines that an employee is eligible for an advance payment of the premium tax credit, only to have the IRS determine that the employee is not entitled to the premium tax credit. For example, an employee may be eligible for APTC based on his *projected* income, but be disqualified from the credit based on his *actual* income. *Supreme Linen*, 2026 U.S. Dist. LEXIS, at *27; *compare* 42 U.S.C. §18082(b)(1)(B) *with* I.R.C. §36B(a), (c)(1)(A). Similarly, an employee who meets the APTC eligibility criteria will nonetheless have his credit disallowed if another individual claims the employee as a dependent. I.R.C. §36B(c)(1)(D). Likewise, a married employee who meets the APTC eligibility criteria will have his credit disallowed if he elects not to file a joint return. *Id.* §36B(c)(1)(C). Or the IRS may simply disallow the credit claimed by an APTC-eligible employee

---

[1] *E.g.*, I.R.C. §§25A(a) ("there shall be allowed as a credit …"), 1312(6) (correlative adjustment "allows or disallows a deduction (including a credit) in computing the taxable income"), 1357(c)(1) (losses, deductions, or credits attributable to activities excluded from gross income "shall be disallowed").

because he failed to file Form 8962 demonstrating his entitlement thereto.  I.R.C. §36B; https://www.irs.gov/pub/irs-pdf/f8962.pdf.

Second, the ACA §1411(e) & (f) notice-and-appeal process is conducted without regard to whether an employee worked full-time or part-time, while the I.R.C. §4980H certification pertains only to full-time employees.  *Supreme Linen*, 2026 U.S. Dist. LEXIS, at \*29-\*30; *compare* 42 U.S.C. §18081(e)(4)(B)(iii), (f)(1)(A) *with* I.R.C. §4980H(a)(2), (b)(1)(B).

Third, the ACA §1411(e) & (f) notice-and-appeal process is conducted without regard to an employer's size, while the I.R.C. §4980H certification pertains only to applicable large employers (*i.e.*, generally those with at least 50 full-time employees, including full-time equivalent employees).  *Compare* 42 U.S.C. §18081(e)(4)(B)(iii), (f)(1)(A) *with* I.R.C. §4980H(a)(2), (b)(1)(B).

Fourth, the ACA §1411(e) & (f) notice-and-appeal process is limited to employers that failed to offer health coverage at all or offered unaffordable coverage, while the I.R.C. §4980H certification process also applies to an additional category of employers: those which offered

coverage that did not provide minimum value. *Compare* 42 U.S.C. §18081(e)(4)(B)(iii), (f)(1)(A) *with* I.R.C. §4980H(a)(2), (b)(1)(B).

Fifth, the ACA §1411(e) & (f) notice-and-appeal process is tied to a one-time eligibility determination, while the I.R.C. §4980H certification must address the extent to which a premium tax credit was allowed or paid on a month-by-month basis. *Compare* 42 U.S.C. §§18081(e)(4)(B)(iii) & (f)(1)(A), 18082(b)(1)(A) *with* I.R.C. §4980H(a)(2), (b)(1)(B).

4. Furthermore, the IRS receives all the information necessary to make an I.R.C. §4980H certification in the ordinary course. (Gov't Br. 29-30.) And, the IRS is prohibited from disclosing that information to HHS and the Exchanges. (Gov't Br. 30-33.) Faulk does not dispute either of these points.

Nonetheless, Faulk insists that the IRS cannot use the information already in its possession to make I.R.C. §4980H certifications when it assesses ESRPs, but rather must rely on HHS to do so. (Br. 38-39.) Faulk never explains why Congress would have adopted such an approach, which improperly "render[s] [the] statute … inefficient." *E.E.O.C. v. Louisville & Nashville R.R. Co.*, 505 F.2d 610,

613 (5th Cir. 1974) (citation and internal quotations omitted); (Gov't Br. 34-35).

More fundamentally, HHS does not have the information necessary to make the required certification. HHS cannot certify that a premium tax credit has been *allowed or paid*, as required by the plain terms of I.R.C. §4980H. At most, HHS can certify that an employee was *eligible* for an advance payment of the premium tax credit. And for individuals who claim the premium tax credit on their income tax returns, without first seeking APTC through the Exchange, HHS cannot even certify that. (Gov't Br. 10-11, 31-34); *Supreme Linen*, 2026 U.S. Dist. LEXIS, at *26-*29, *30-*32.

Faulk's only response is to claim that the data-sharing provision in ACA §1412(a)(2)(B)(1) compels HHS to provide the IRS with "the exact data points necessary to assess the ESRP tax." (Br. 38-39.) The provision does no such thing. By its terms, the provision directs HHS to provide information to the IRS about the Exchanges' "advance determinations" that one or more of an employer's employees was "determined to be *eligible* for the premium tax credit." 42 U.S.C. §18082(a)(2)(B) (emphasis added). But a one-time advance

determination that an employee is *eligible* for the premium tax credit is distinct from the month-by-month *allowance or payment* of that credit. *Supra*, pp. 10-12. Faulk completely ignores the fact that the Exchanges make no determination whatsoever—and thus HHS can make no certification whatsoever—about individuals who claim the premium tax credit on their income tax returns without first seeking APTC. *Supreme Linen*, 2026 U.S. Dist. LEXIS, at *30-*32.

To be sure, the information that HHS shares pursuant to ACA §1412(a)(2)(B)(1) may help the IRS determine whether to assess ESRPs, insofar as it can be reconciled against information reported by applicable large employers and their employees. (Br. 39.) But that information does not provide HHS with a sufficient basis to make the certification contemplated by I.R.C. §4980H, and HHS has no other means of obtaining the additional information needed. Once again, the logical conclusion is that Congress intended for the IRS to make I.R.C. §4980H certifications.

5. The contrary interpretation advanced by the District Court and Faulk hinges on I.R.C. §4980H's use of the word "under," which they contend should be construed as "pursuant to the authority of."

(ROA.634-635; Br. 34-35.)  So understood, I.R.C. §4980H would require a certification to be made "pursuant to the authority" of ACA §1411. But ACA §1411 does not authorize anyone to certify anything in connection with the ESRP or employer mandate.  *Supra*, p. 7. In addition, HHS, which administers ACA §1411, does not have—and cannot obtain—the information necessary to make the certification contemplated by I.R.C. §4980H.  *Supra*, pp. 13-14.  For these reasons, "under" cannot reasonably be construed as "pursuant to the authority of" here.

Resisting this conclusion, Faulk proposes two rules about how to construe the word "under."  First, it proposes that, when used "in a statutory context," the best meaning of "under" is "subject to," "governed by," or "by reason of the authority of."  Second, Faulk proposes that "under" should only be construed as "in accordance with" or "consistent with" when "the object of the preposition or adverbial phrase 'under' is something other than an action." (Br. 34-36.)  The bright-line rules proposed by Faulk fly in the face of controlling precedent, which provides that "the word 'under' is a chameleon' that 'must draw its meaning from its context.'" *Nat'l Ass'n of Mfrs. v. Dep't*

*of Def.*, 583 U.S. 109, 124 (2018) (quoting *Kucana v. Holder*, 558 U.S. 233, 245 (2010)); *accord Bassel v. Durand-Day ("In re Durand-Day")*, 134 F.4th 846, 852 (5th Cir. 2025).  In determining the meaning of "under" in any particular statute, due consideration must therefore be paid to how the word in used in the provision at issue, *Nat'l Ass'n of Mfrs.*, 583 U.S. at 124-25, how the provision fits into the "statutory scheme as a whole," *In re Durand-Day"*, 134 F.4th at 852-53; *accord Kucana*, 558 U.S. at 245, and the applicable canons of statutory construction, *Nat'l Ass'n of Mfrs.*, 583 U.S. at 124-25; *St. Louis Fuel and Supply Co., Inc. v. F.E.R.C.*, 890 F.2d 446, 449-50 (D.C. Cir. 1989).  When those factors are considered, "under"—as used in I.R.C. §4980H— is more appropriately construed as "in accordance with" or "consistent with."

Ultimately, Faulk concedes that it may be "permissible" to construe "under section 1411" as "in accordance with" or "consistent with" ACA §1411.  (Br. 34.)  It nonetheless argues that such a construction "is not the best one" because it would "render[ ] the phrase weak and redundant."  (Br. 34, 36.)  Faulk is wrong.  As another court explained in rejecting the same argument Faulk makes, a construction

of "under" as "consistent with" reflects Congress's decision to "incorporate[ ] the eligibility standards set forth in Section 1411" into I.R.C. §4980H certifications. *Supreme Linen*, 2026 U.S. Dist. LEXIS, at *20-*21. Thus, far from being "weak and redundant," this cross-reference was a logical and appropriate way for Congress to direct that the IRS look outside the Internal Revenue Code for some of the standards governing ESRP liability. (Gov't Br. 40-42.)

6. Faulk next contends that its reading of "certified to the employer under section 1411" is supported by the nearest-reasonable-referent canon. Although it is not entirely clear, Faulk's contention appears to be that "under section 1411" modifies both what action is taken (*i.e.*, "has been certified") and to whom that action is directed (*i.e.*, "to the employer"). Faulk's further contention appears to be that, when "under section 1411" is so construed, both the I.R.C. §4980H certification itself and "transmission" of that certification to an employer must be "authorized by, and consistent with, Section 1411." (Br. 37-38.) This argument is misplaced.

As a preliminary matter, it is not clear why Faulk thinks that the nearest-reasonable-referent canon supports its proposed reading. The

canon provides that, for syntax involving something other than a parallel series of nouns or verbs, an ambiguous modifier normally applies *only* to the nearest reasonable referent. Antonin Scalia & Bryan A. Garner, *Reading Law: The Interpretation of Legal Texts* 33, 152-53 (2012). Faulk's invocation of the canon to suggest that "under section 1411" applies to *both* what action is taken *and* to whom that action is directed is puzzling.

Moreover, the nearest-reasonable-referent canon requires that "under section 1411" be read in the context of not only what precedes it, but also what follows. *See Reading Law* at 152. And what follows is the content of the required certification—namely, that at least one-full-time employee has "enrolled for such month in a qualified health plan with respect to which an applicable premium tax credit … *is allowed or paid* with respect to the employee." I.R.C. §4980H(a)(2) (emphasis added); *id.* §4980H(b)(1)(B). As explained, neither HHS nor an Exchange can make such a certification because it does not have information about whether a premium tax credit has been allowed or paid. *Supra*, pp. 13-14.

Faulk's nearest-reasonable-referent argument is also self-defeating. Again, ACA §1411 does not authorize anyone to certify anything connected to the ESRP or the employer mandate. *Supra*, p. 7. By extension, ACA §1411 does not authorize the transmission of such a certification to an employer. Accordingly, it does not make sense to read I.R.C. §4980H as requiring certifications to be made and transmitted by reason of such non-existent authority.

Perhaps realizing this problem, Faulk proposes that "under section 1411" can be read as either "authorized by" or "consistent with" ACA §1411. (Br. 37.) But this gives away the game. The District Court's interpretation of I.R.C. §4980H depends on "under section 1411" meaning "by reason of the authority of section 1411." (ROA.634-635.) Once "under section 1411" is understood to mean "in accordance with" or "consistent with" ACA §1411, the Government's reading is plainly superior.

7. Nor is there merit to Faulk's suggestion that construing "under" as "in accordance with" or "consistent with" would undermine the "privacy and due process" protections embodied in ACA §1411. (Br. 37-38.) As to privacy, the IRS remains subject to I.R.C. §6103's

comprehensive scheme governing the inspection and disclosure of returns and return information, the provisions of which are repeatedly incorporated into ACA §1411. 42 U.S.C. §18081(b)(3)(A), (c)(4)(B), (f)(2)(B). Faulk has identified no instance in which information would be entitled to less protection under I.R.C. §6103 than ACA §1411.

As to due process, the Government explained in its opening brief that Faulk could bring a suit to compel the notice-and-appeal process contemplated by ACA §1411(e) & (f). (Gov't Br. 59.) Faulk does not dispute that point. It is therefore inaccurate to suggest that rewriting I.R.C. §4980H to condition ESRP liability on compliance with ACA §1411's notice-and-appeal process is necessary to prevent HHS from "ignoring" its obligations, rendering them "a nullity," or otherwise making them "meaningless." (Br. 6, 37-38, 40-41.) The fact that Faulk would have preferred a different remedy does not give it license to create such a remedy out of whole cloth. (Gov't Br. 56-59.)

8. Faulk cites two other statutory provisions (Br. 42-44), but neither supports its reading of I.R.C. §4980H. Faulk first invokes ACA §1411(i), which directs HHS, "in consultation" with the Treasury Department, to conduct a study of the procedures necessary to ensure

that "[t]he rights of employers to adequate due process and access to information necessary to accurately determine any payment assessed on employers" are protected. 42 U.S.C. §18081(i)(1)(B). While ACA §1411(i) references both "this title" (*i.e.*, Title 42) and "section 4980H of Title 26," it does not address the interplay between the two and is, therefore, of limited utility in discerning that interplay.

Faulk's invocation of an appropriations law enacted three-and-a-half years after the Affordable Care Act is even farther afield. "[T]he views of a subsequent Congress … at best, form a hazardous basis for inferring the intent of an earlier one." *South Carolina v. Regan*, 465 U.S. 367, 378 n.17 (1984) (citation and internal quotations omitted). And the appropriations law merely reiterates that HHS is responsible for determining whether individuals who apply for advance payment of the premium tax credit "are *eligible* for such credits." Continuing Appropriations Act, 2014, P.L. 113-46, §1001, 127 Stat. 557 (Oct. 17, 2013) (emphasis added). It does not divest the IRS of responsibility for determining whether those credits should be *allowed or paid*.

9.      Finally, an HHS regulation reinforces the conclusion that responsibility for making I.R.C. §4980H certifications belongs to the

IRS. *See* 45 C.F.R. §155.310(i) ("the Internal Revenue Service will adopt methods to certify …"); (Gov't Br. 35-36). That regulation was promulgated in close proximity to the Affordable Care Act's effective date, issued through notice-and-comment rulemaking, and reflects the Government's consistent, considered position over the last decade. Accordingly, it provides additional support for the Government's interpretation of I.R.C. §4980H. *See Loper Bright Enters. v. Raimondo*, 603 U.S. 369, 394 (2024).

In resisting this conclusion, Faulk parrots the District Court's conclusion that the regulation should be disregarded as an impermissible "delegation" of authority from HHS to the IRS. (Br. 23-32.) But this conclusion is belied by the regulation's plain text, which simply states that the certification is "part of [the IRS's] determination of whether an employer has a liability under section 4980H of the [Internal Revenue] Code." 45 C.F.R. §155.310(i). Although Faulk correctly notes that the regulation provides that the IRS "will" adopt methods to make the certification contemplated by I.R.C. §4980H (Br. 22-23), this in no way suggests that the authority to make such a

certification originated with HHS—much less that HHS was delegating that authority to the IRS.

Hurrying past the regulation's text, Faulk homes in on the preamble to the proposed regulation. (Br. 24-25.) This does not change the analysis. The preamble stated that paragraph (i) was a proposal "regarding a certification program pursuant to the Secretary[ ] [of Health and Human Services'] program for determining eligibility for advance payments of the premium tax credit." 78 Fed. Reg. 4594-01, at *4636 (Jan. 22, 2013). But the preamble immediately clarified that the certification was part of the Treasury Department's "determination of potential employer liability *under section 4980H of the [Internal Revenue Code].*" *Id.* (emphasis added). Likewise, the preamble to the final regulation confirmed that the certification was part of the Treasury Department's "determination … *under section 4980H of the Code.*" 78 Fed. Reg. 42160-01, at *42250 (July 15, 2013) (emphasis added).

Changing gears, Faulk asserts that the IRS "accepted and acted upon the delegation from HHS." (Br. 25.) This is specious. When Faulk questioned why the IRS, rather than HHS, had made the I.R.C.

§4980H certification for Faulk's proposed ESRP liability, the IRS explained that doing so was "'part of its determination of whether an employer has a liability under section 4980H of the Internal Revenue Code.'" (ROA.188 (quoting 45 C.F.R. §155.310(i)); *see* ROA.429-431.) The IRS did not, by quoting the regulation, transform it from one setting forth the Government's interpretation of the relevant statute into one delegating responsibility for administering that statute.

Finally, Faulk observes that, in enacting the Affordable Care Act, "Congress provided numerous narrow, discrete commands and authorizations," many of which are directed at HHS. Although it is not entirely clear, Faulk appears to extrapolate that all Affordable Care Act "commands and authorizations"—including those contained in the Internal Revenue Code— are directed at HHS, unless Congress expressly provided otherwise. In Faulk's words, "[t]he ACA is HHS's world; Treasury just lives in it." (Br. 26-31.) Faulk is wrong for at least three reasons.

First, Faulk ignores the presumption in I.R.C. §7801(a)(1) that the Treasury Department enforces and administers the Internal Revenue Code. *Supra*, p. 6. Second, where Congress has assigned some Internal

Revenue Code functions to HHS, but not others, it should be inferred that the omission was intentional. *See Hamdan v. Rumsfeld*, 548 U.S. 557, 578 (2006) (discussing the negative-inference canon). Third, Faulk's position would lead to the absurd result that HHS would be charged with such core IRS functions as allowing and disallowing tax credits, *see* I.R.C. §36B(a), determining tax liabilities, *see* I.R.C. §4980H(a) & (b)(1), and determining tax "penalty" liabilities, *see* I.R.C. §5000A(b)(1). *See* I.R.C. §7803(a)(2)(A). No one thinks that is the right result.

## II.

### The District Court erred in declaring the HHS regulation invalid and setting it aside

1.  45 C.F.R. §155.310(i) represents the best reading of the relevant statutes, namely that the IRS is charged with making the certification required by I.R.C. §4980H. It follows that the regulation does not conflict with those statutes. *See Centro de Trabajadores Unidos v. Bessent*, 167 F.4th 1218, 1236-39 (D.C. Cir. 2026). The District Court therefore erred by declaring the regulation invalid and setting it aside. (Gov't Br. 60.)

2.     The District Court also lacked jurisdiction to award such declaratory relief.  (Gov't Br. 60-68.)  The Declaratory Judgment Act expressly precludes awards of declaratory relief "with respect to Federal taxes."  28 U.S.C. §2201(a).  The tax exception is jurisdictional, barring claims that fall within its scope.  *Rivero v. Fid. Invests., Inc.*, 1 F.4th 340, 344-45 (5th Cir. 2021), *cert. denied*, 142 S. Ct. 1670 (Mem.) (2022).  The question, then, is whether Faulk's request for a declaratory judgment invalidating the HHS regulation falls within the tax exception's scope.

This Court addressed the scope of the tax exception in *Rivero, supra*.  There, Carmela Rivero and Jorge Diaz-Gonzalez Medrano jointly owned a brokerage account at Fidelity.  Upon Medrano's death, Rivero attempted to re-register the account solely in her name.  Fidelity would not let Rivero do so unless she first supplied the transfer certificate contemplated by 26 C.F.R. §20.6325-1.  Rivero was unable or unwilling to provide the transfer certificate.  Instead, she filed suit against Fidelity, seeking a declaratory judgment that no transfer certificate was needed.  The district court concluded that the tax exception deprived it of jurisdiction to award Rivero's requested

declaratory relief and, therefore, dismissed her suit. *Rivero*, 1 F.4th at 342-43.

This Court affirmed. It began by considering the separate jurisdictional bar contained in the Anti-Injunction Act ("AIA"), I.R.C. §7421(a), which prohibits suits "for the purpose of restraining the assessment or collection of any tax." However, the Court concluded that Rivero's suit fell outside the AIA because it did "not involve 'the assessment or collection of any tax.'" *Rivero*, 1 F.4th at 345-46.

Next, this Court turned to the tax exception to the Declaratory Judgment Act. It concluded that resolution of Rivero's suit "would require the court to construe various tax code provisions and treasury regulations to value Medrano's gross estate." Although doing so would not impact whether the IRS assessed or collected any taxes, it would "necessarily" require the court to make a determination "with respect to Federal taxes." As such, this Court held that Rivero's suit fell within the "plain language" of the tax exception, depriving it of jurisdiction. *Rivero*, 1 F.4th at 346.

The same result follows here. Faulk sought a declaratory judgment invalidating the HHS regulation because the IRS was

"pursu[ing] ESRP excise taxes against Faulk Company in reliance on" that regulation. (ROA.17, 20-21.) Resolution of this issue requires the Court to construe various tax code provisions (I.R.C. §§36B, 4980H, etc.) and determine how they apply to the imposition of excise tax liability. Thus, this Court will necessarily have to make a determination "with respect to Federal taxes"—*i.e.*, precisely the relief that the tax exception prohibits. Indeed, there is a closer nexus to Federal taxes here than in *Rivero* because Faulk's requested relief is aimed directly at the process by which the IRS proposes and assesses taxes.

Faulk's only attempt to distinguish *Rivero*, *supra*, is to note that the regulation at issue here was promulgated by HHS, rather than the Treasury Department. (Br. 20-21.) This is a red herring. The regulation speaks to the determination of tax liability, the allowance or payment of tax credits, and the IRS's role in carrying out those functions, *see* 45 C.F.R. §155.310(i); the regulation does not serve any non-tax functions, *see id.*; and Faulk's requested declaratory relief is aimed directly at the process for proposing and assessing taxes (*see* ROA.17, 20-21). The suggestion that Faulk's claim seeking declaratory relief is not "with respect to Federal taxes" exalts form over substance.

3.     Without any meaningful way to distinguish *Rivero*, *supra*, Faulk attacks *Rivero's* reasoning as unpersuasive.  (Br. 8-11.)  Of course, *Rivero* is binding.  *See White v. Estelle*, 720 F.2d 415, 417 (5th Cir. 1983).  And it is Faulk's attacks on *Rivero* that are unpersuasive.

First, Faulk argues that this Court's "substantive analysis of the *scope* of the DJA federal tax exception [in *Rivero*] is relegated to a mere two paragraphs." (Br. 8-9).  There is no minimum number of paragraphs that an opinion must devote to an issue.  This is especially true where, as here, the Court determines that the meaning of the statute can be derived from its "plain language."  *Rivero*, 1 F.4th at 346.

Second, Faulk argues that "whether the DJA federal tax exception is broader than the AIA was not at issue … because the parties in *Rivero* did not brief it." (Br. 9.)  Faulk is mistaken.  Rivero argued that the AIA and the tax exception were "coterminous," *Brief of Appellant Carmela Rivero*, 2020 WL 5820893, at \*6, and this Court rejected her argument, *Rivero*, 1 F.4th at 345.

Third, Faulk argues that *Rivero* lacks precedential force because it was decided approximately one month after the Supreme Court issued its opinion in *CIC Servs., LLC v. Internal Revenue Serv.*, 593 U.S. 209

(2021). (Br. 11.) This argument is puzzling. It is true that an "intervening and overriding" Supreme Court decision can overrule a decision of this Court. *White*, 720 F.2d at 417. But *CIC Services* was not "intervening" because it was issued *before* this Court decided *Rivero*, and *CIC Services* was not "overriding" because it addressed the scope of the AIA—not the DJA's tax exception. (Gov't Br. 64-65.) Even if this Court were to apply *CIC Services* to the tax exception, the tax exception would still bar Faulk's requested declaratory relief. (Gov't Br. 65-68). Faulk wholly fails to engage with that argument.

4. Faulk also makes a series of arguments that depend on this Court disregarding *Rivero* and interpreting the tax exception on a blank slate. (Br. 11-20.) While this Court has no license to disregard a precedential opinion, we address Faulk's arguments below for completeness.

Faulk initially argues that "with respect to Federal taxes" should be construed as "'a case *specifically concerning* Federal taxes,' which would suggest something like a cause of action seeking a legally-binding declaration of federal tax liability or the propriety of collection efforts." (Br. 13.) If Congress had wanted to limit the tax exception to a

particular category of tax-related cases or functions, it could have done so. *See, e.g.*, 28 U.S.C. §1341 (prohibiting district courts from "enjoin[ing], suspend[ing], or restrain[ing] the assessment, levy or collection of any tax under State law …" under certain circumstances). Instead, it chose to simply withdraw jurisdiction for suits seeking declaratory relief "with respect to Federal taxes." 28 U.S.C. §2201(a). That choice should be respected.

Furthermore, Faulk argues that "provisos" and other exceptions— like the DJA's tax exception—should be construed narrowly. (Br. 16-17.) But "the limitations on a statute's scope are as much a part of the statute's 'purpose' as the scope itself." *Reading Law* at 363. Thus, absent a contrary indication in the statutory text, "'there is no reason to give [exceptions] anything other than a fair (rather than a 'narrow') interpretation.'" *Encino Motorcars, LLC v. Navarro*, 584 U.S. 79, 88-89 (2018) (quoting *Reading Law* at 363). In any event, regardless of whether the tax exception is construed narrowly, it should not be construed as adding terms and conditions that appear nowhere in the statutory text. *See Jama*, 543 U.S. at 341.

Lacking a textual hook, Faulk tries to hang its hat on a Senate committee report.  (Br. 18-19.)  The report does state that one purpose of the tax exception is to forestall suits seeking declaratory relief "with respect to the determination, assessment, and collection of Federal taxes."  S. Rep. No. 74-1240, pt. 1, at 11 (1935).  But it states that a further purpose of the tax exception is to channel taxpayers toward "that existing procedure … in … the courts."  *Id.*  This purpose is served here by requiring Faulk to challenge the process for imposing ESRP liability using the "existing procedure in the courts"—*i.e.*, a refund suit—as Faulk does in Count I of its complaint.  But Faulk's claim for declaratory relief in Count III goes well beyond the refund-suit procedure established in I.R.C. §7422(a).

5.     At bottom, whatever it means for a claim seeking declaratory relief to be "with respect to Federal taxes," Faulk's claim is one.  If we apply the test from *Rivero*, Faulk's claim is "with respect to Federal taxes" because it requires the Court to "construe various tax code provisions … and make a determination with respect to Federal taxes." 1 F.4th at 346 (citation and internal quotations omitted).  If we apply the more stringent AIA test, Faulk's claim is "with respect to Federal

taxes" because it "impliedly challenges the validity of the tax assessment itself" by alleging that the IRS commits a "procedural deficiency" each time it makes such an assessment. *Franklin v. United States*, 49 F.4th 429, 434 (5th Cir. 2022). And if we consider ordinary usage, Faulk's claim is "with respect to Federal taxes" because it seeks relief from an allegedly invalid regulation that the IRS is relying on to "pursue ESRP excise taxes against Faulk Company." (ROA.17, 20-21.)

Faulk protests that it is only trying to prevent the IRS from using a particular process to assess ESRPs, not from assessing ESRPs altogether. (Br. 20-21.) But courts have consistently held that a taxpayer cannot avoid either the tax exception or the AIA by suing to prevent the IRS from taking antecedent steps in the assessment and collection process. *E.g.*, *Franklin*, 49 F.4th at 434; *Standard Ins. v. Internal Revenue Serv.*, 162 F.4th 1035, 1044-45 (10th Cir. 2025); *Hancock Cty. Land Acquisitions, LLC v. United States*, 2022 WL 3449525, at *2 (11th Cir. 2022) (per curiam). So too here.

## CONCLUSION

The District Court's judgment should be reversed.

Respectfully submitted,

BRETT A. SHUMATE
  *Assistant Attorney General*
JOSHUA WU
  *Deputy Assistant Attorney General*

*/s/ Geoffrey J. Klimas*

ELLEN PAGE DELSOLE          (202) 514-8128
GEOFFREY J. KLIMAS          (202) 307-6346
  *Attorneys*
  *Tax Division*
  *Department of Justice*
  *Post Office Box 502*
  *Washington, D.C. 20044*

MARCH 30, 2026

# CERTIFICATE OF COMPLIANCE

## Certificate of Compliance With Type-Volume Limit, Typeface Requirements, and Type-Style Requirements

1.  This document complies with the word limit of Fed. R. App. P. 32(a)(7)(B) because, excluding the parts of the document exempted by Fed. R. App. P. 32(f):

[X]   this document contains 6,416 words, **or**

[ ]   this brief uses a monospaced typeface and contains _____ lines of text.

2.  This document complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because:

[X]   this document has been prepared in a proportionally spaced typeface using Word for Microsoft 365 in Century Schoolbook 14, **or**

[ ]   this brief has been prepared in a monospaced typeface using _____ with _____.

3.  All required privacy redactions have been made in accordance with Local Rule 25.2.13.  The document has been scanned for viruses with the most recent version of a commercial virus scanning program and is free of viruses.  The electronic and paper submissions are identical as required by Local Rule 25.2.1.

(s)   /s/ Geoffrey Klimas

Attorney for  Appellants

Dated:      March 30, 2026